319 So.2d 420 (1975)
STATE of Louisiana
v.
Almond LOCKETT.
No. 56197.
Supreme Court of Louisiana.
October 1, 1975.
*421 Joseph Accardo, Jr., La Place, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Melvin P. Barre, Dist. Atty., Abbott J. Reeves, Director, Research and Appeals Division, Gretna, for plaintiff-appellee.
MARCUS, Justice.
Defendant, Almond Lockett, was charged by bill of information with the theft, on March 29, 1973, of copper intercell connectors, having a value in excess of $100.00. La.R.S. 14:67. Following a trial by jury, he was found guilty as charged and was subsequently sentenced to serve two years with the Department of Corrections. Nine bills of exceptions were reserved during trial. On appeal to this court, defendant assigns Bills of Exceptions Nos. 1, 3, 5, 6, 7, 8 and 9 as the basis for reversal of his conviction and sentence. Bills of Exceptions Nos. 2 and 4 were not briefed nor argued and are therefore considered abandoned.[1]

FACTS
On March 29, 1973, Almond Lockett was employed as a truck driver for Giambellucia *422 Construction Company at the Hooker Chemical Company plant. At approximately 5:45 a.m. on that date, a black male was seen leaving the plant in a red open bottom dump truck belonging to Giambellucia Construction Company. The truck was loaded with copper intercell connectors. A guard at the main entrance to the Hooker plant was unsuccessful in stopping the truck. The truck proceeded down the side road of the plant to the river road where it turned towards Hahnville. The St. Charles Parish Sheriff's Office was immediately notified to stop the truck. About an hour later (7:00 a.m.), Lockett and the truck were located behind the levee at the P & L Pit in Hahnville. The truck was empty, but had evidence of scratch marks. Defendant was arrested and taken to the courthouse. At that time, he was charged with unauthorized use of a movable. A search was made of the area to determine if the truck had left the main road. Tire tracks were discovered which led to a grassy area where the copper intercell connectors were found underneath some tin and other debris dumped in a pile along with sand and shell mix of the kind hauled in Lockett's truck on the previous day. In all, 206 copper intercell connectors were found. These connectors were made of solid copper, weighed between 38 to 40 pounds each and had a total estimated value of $7,273.00. On May 4, 1973, Lockett was charged by bill of information with the theft of these copper intercell connectors.

BILL OF EXCEPTIONS NO. 1
A motion to quash was filed urging that the absence of women on the jury venire violated defendant's constitutional rights. Reliance for this contention is the decision rendered by the United States Supreme Court in Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975).
The present matter was tried in May of 1974. The Taylor decision was rendered January 21, 1975, after defendant's conviction. The Supreme Court determined in Daniel v. Louisiana, 420 U.S. 31, 95 S.Ct. 704, 42 L.Ed.2d 790 (1975) that the Taylor ruling is not to be applied retroactively, as a matter of federal law, to convictions obtained by juries empanelled prior to the date of the Taylor decision. This court has held that, consonant with Daniel, the Taylor ruling would not be applied retroactively. State v. Rester, 309 So.2d 321 (La.1975); State v. Devore, 309 So.2d 325 (La.1975). Hence, the motion to quash was properly denied.

BILLS OF EXCEPTIONS NOS. 3, 5, 7 and 8
These bills of exceptions concern the free and voluntary nature of an inculpatory statement made by defendant to a police officer shortly after his arrest. Objections were made when testimony was adduced that the oral statement was made by defendant and when the written waiver form (S-5) was introduced into evidence.
Defendant contends that the prosecution has made no showing that the inculpatory statement was given voluntarily. Hence, it is argued that an improper foundation was laid for the introduction of this statement. Defendant further contends that, although he signed the waiver of rights form, he was not fully advised of the consequence of this act.
According to the record, Detective Giglio of the St. Charles Parish Sheriff's Office interrogated defendant at the Hahnville Courthouse at 9:45 a.m. on March 29, 1973 (date of alleged crime). Defendant had been arrested and booked about seven-thirty that morning. Outside the presence of the jury, Detective Giglio testified that he fully advised defendant of his rights by reading them from a written form (S-5). This form was then handed to defendant to read. After having read same, defendant was asked whether or not he understood what was in the document to which he replied in the affirmative and signed it. After this occurred, defendant narrated events to Detective Giglio which implicated himself and three others at the *423 Hooker plant. The only other person present at the time defendant was advised of his rights and executed the waiver form was Officer Oubre who corroborated the testimony of Detective Giglio. No rebutting testimony was offered by defendant nor did he take the stand at the hearing when the predicate was laid in order to traverse the testimony of these police officers.
The trial judge found as a fact that the state had affirmatively established that the oral inculpatory statement made by defendant to the police officer was free and voluntary and not made under the influence of fear, duress, intimidation or inducements after defendant had been given his Miranda warnings and had executed the waiver of rights form. In our view, the record fully supports these findings by the trial judge. The state has met the burden of proof required by law. Hence, the statement and waiver form were properly admitted in evidence. La.R.S. 15:451, 452. Bills of Exceptions Nos. 3, 5, 7 and 8 are without merit.

BILL OF EXCEPTIONS NO. 6
Detective Giglio, while relating the inculpatory statement made to him by defendant, began to refer to what defendant stated two white individuals had said to him. An objection made by defendant on the ground of hearsay was overruled. While the content of what the individuals said was not revealed, Giglio resumed his testimony, stating that defendant told him that the two white individuals were to load the truck driven by him, that the next morning defendant was to drive his truck off the Hooker property, and that he would thereafter unload the copper at a designated place.
Hearsay evidence is inadmissible unless subject to one of the exceptions. La.R.S. 15:434; La.R.S. 15:463. Here, the officer was relating the inculpatory statement made to him by the defendant. Hearsay testimony relating to a confession or an admission is admissible under a widely recognized exception to the hearsay rule. See La.R.S. 15:449 et seq.; State v. Butler, 302 So.2d 585 (La.1974); and McCormick on Evidence, Secs. 144, 145 (Cleary Ed.1972). Hence, the inculpatory statement related to Detective Giglio by defendant was admissible in its entirety. This bill is without merit.

BILL OF EXCEPTIONS NO. 9
After the close of the state's evidence, defendant moved for a directed verdict of acquittal. The motion was denied, and this bill was reserved.
This court can find error in the trial judge's denial of a motion for a directed verdict and reverse the conviction only when there is no evidence of the crime or an essential element thereof. La. Code Crim.P. art. 778 (1966); State v. Douglas, 278 So.2d 485 (La.1973).
In the instant case, a truck loaded with copper intercell connectors was seen leaving the Hooker plant on the morning of the theft. An hour later, the same truck with defendant behind the wheel was found by the authorities. Tire marks led the police to a location where the stolen copper connectors were hidden. In his inculpatory statement admitted into evidence, defendant admitted driving the loaded truck from the plant property on the morning of the theft and unloading same at the place where the copper connectors were ultimately recovered. Certainly, this constituted some evidence of each element of the crime charged. Hence, the trial judge correctly denied defendant's motion for a directed verdict of acquittal and this bill is without merit.

DECREE
For the reasons assigned, the conviction and sentence are affirmed.
NOTES
[1] State v. Edwards, 261 La. 1014, 261 So.2d 649 (1972).