345 So.2d 1185 (1977)
STATE of Louisiana
v.
Billy S. MONROE.
No. 58931.
Supreme Court of Louisiana.
May 16, 1977.
Arthur A. Lemann, III, Supervising Atty., New Orleans, John M. Standridge, Student Practitioner, for defendant-appellant.
*1186 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise S. Korns, Asst. Dist. Atty., for plaintiff-appellee.
DENNIS, Justice.
At approximately 5:30 a. m. on May 18, 1974, the victim of the crime in this case, a woman who lived alone in an apartment, awoke with a man on her back. As she attempted to rise, he placed a knife at her chest, then instructed her to close her eyes and get out of bed. He blindfolded her with the valance from a curtain, helped her to take off her nightgown, and, holding the knife to her chest, raped her. Subsequently she heard him in her living room ransacking her purse. Once it became apparent the intruder had departed, she began to scream and sought assistance from a neighbor in an adjoining apartment. As her phone wire had been severed, the victim's neighbor drove her to a telephone to call the police. Latent fingerprints of a suspect were found on two articles from the woman's purse and on her telephone. There were no identifiable fingerprints on a knife found under the rug in the apartment. Beyond recalling that the rapist had an unpleasant, strong body odor, the woman could not provide any means of describing him.
Nevertheless, the fingerprints led the police to arrest the defendant, Billy S. Monroe. They found in his pocket a piece of clothes hanger or wire similar to a piece of wire found in the alleged victim's apartment, and one officer testified he had a very strong body odor.
Defendant, Billy S. Monroe, was charged by grand jury indictment with aggravated rape. La.R.S. 14:42. On October 22, 1974, he was found guilty as charged by a jury of twelve. Subsequently, defendant was sentenced to death.
Defendant appealed, and we find that the trial court committed reversible error by allowing the introduction of hearsay evidence pertaining to a medical examination of the alleged victim by an assistant coroner who was not called as a witness at the trial. By assignment of error number six, defendant complains that the trial court overruled his objection to the testimony of the coroner in which he described the examination and related the findings of the absent physician. By assignment of error number seven, defendant argues that the trial court erred in permitting the introduction of two documents identified by the coroner as reports pertaining to the examination by his absent assistant. Finding merit in these two related assignments we will not consider the other errors complained of by defendant.
During presentation of its case in chief, the State called Dr. Frank Minyard, the Orleans Parish Coroner, who testified, over defendant's objection, to the results of a medical examination of the alleged rape victim conducted by Dr. Ralph Lupin, an assistant coroner, some three hours after the alleged rape. According to Dr. Minyard, he appeared in place of Dr. Lupin who was delivering a baby at the West Jefferson Hospital on the day of trial. As Dr. Minyard had not been present during the examination, his testimony was based solely on the information contained in two documents which he said were prepared in conjunction with Dr. Lupin's examination.[1] The two documents were introduced over timely objection by the defendant that the evidence was inadmissible hearsay, and that defendant was being denied the right "to cross examine the man who actually made the tests." The trial judge, upon being informed by the coroner that the reports were official and permanent records of his office, overruled defendant's objections.
Dr. Minyard informed the jury that Dr. Lupin had conducted two separate tests for the presence of seminal fluid in the vagina of the alleged rape victimone for sperm, the other for acid phosphatase, a chemical present in prostatic fluid. Dr. Lupin, according *1187 to Dr. Minyard, found the results of both tests to be positive, indicating conclusively that the woman had engaged in sexual intercourse, or had been artificially inseminated. Further, Dr. Minyard testified the sperm cells were found to be motile (active) by Dr. Lupin, indicating that they recently were deposited in her vagina.
The basis of defendant's objection at trial, and his argument before this Court, is that the reports and Dr. Minyard's testimony were inadmissible hearsay evidence.[2] Hearsay is evidence of an unsworn out-of-court assertion, whether oral or written, made by a person other than the testifying witness and offered to prove the truth of the matter asserted. State v. Launey, 335 So.2d 435 (La.1976); State v. Junegain, 324 So.2d 438 (La.1975); State v. Hayes, 306 So.2d 705 (La.1975). Unless it satisfies the requirements of one of the recognized hearsay exceptions, such evidence is inadmissible. State v. Launey, supra; State v. Lockett, 319 So.2d 420 (La.1975); State v. Smith, 285 So.2d 240 (La.1973).
It cannot be doubted that the assistant coroner's reports, and Dr. Minyard's testimony based thereon, constituted hearsay evidence.[3] The extrajudicial assertions contained in the reports indicated the presence of sperm in the alleged victim's vagina. The evidence was offered to prove precisely this fact. Thus, the determinative question presented in this appeal is whether the coroner's testimony and the examination reports were admissible despite their hearsay character, under any recognized exception to the hearsay rule.

I.
The trial court relied on La.C.Cr.P. art. 105 in admitting the hearsay evidence.[4] Article 105 provides inter alia:
"A coroner's report and a procès verbal of an autopsy shall be competent evidence of death and the cause thereof, but not of any other fact." (Emphasis supplied.)
By its express terms, Article 105 does not authorize admission of coroner's reports to prove any facts other than death and cause of death. See Official Revision Comment (c) to La.C.Cr.P. art. 105. Therefore, La.C. Cr.P. art. 105 does not authorize the introduction of the extrajudicial statements objected to by defendant in this case.

II.
The State argues that the legislative exception to the hearsay rule embodied in La.R.S. 13:3714, which authorizes introduction into evidence of certified hospital records, permitted the admission of the examination reports and the coroner's testimony in the present case. La.R.S. 13:3714 provides:
"Whenever a certified copy of the chart or record of any hospital in this state, signed by the director, assistant director, superintendent or secretary-treasurer of the board of administrators of the hospital in question, is offered in evidence in any court of competent jurisdiction, it shall be received in evidence by such court as prima facie proof of its contents, provided that the party against whom the record is sought to be used may summon and examine those making the original of said record as witnesses under cross-examination."
Although introduction of evidence under this statute against criminal defendants was not found to be reversible error in two cases, State v. O'Brien, 255 La. 704, 232 So.2d 484 (1970) (criticized in Work of the *1188 Louisiana Appellate Courts, 1969-70 Term Evidence, 31 La.L.Rev. 388 (1971)); State v. Kelly, 237 La. 956, 112 So.2d 674 (1959), the assistant coroner's examination reports clearly are not certified copies of the charts or records of a hospital. There is no evidence that Dr. Lupin's examination of the alleged rape victim was conducted in a hospital, rather than another place, such as the coroner's office. The documents were offered as permanent and official records of the coroner's office, and were not certified to be hospital records by a hospital director or other statutorily authorized hospital official.

III.
The State has urged that the coroner's testimony and the examination reports may be regarded as admissible under the jurisprudentially recognized "business records" hearsay exception.
The so-called business records exception to the hearsay rule had its genesis in this state in civil rather than criminal law. Comment, Business Records in Louisiana as an Exception to the Hearsay Rule, 21 La.L. Rev. 449 (1961). Despite some early decisions to the contrary, State v. Savage, 213 La. 1011, 36 So.2d 20 (1948); State v. Goldstein, 187 La. 353, 174 So. 873 (1937), the business records exception to the hearsay rule has been recognized by this Court in a number of criminal cases. State v. Roche, 341 So.2d 348 (La.1977); State v. Corey, 339 So.2d 804 (La.1976); State v. Launey, 335 So.2d 435 (La.1976); State v. Junegain, 324 So.2d 438 (La.1975); State v. Hodgeson, 305 So.2d 421 (La.1975); State v. Lewis, 288 So.2d 348 (La.1974); State v. Graves, 259 La. 526, 250 So.2d 727 (1971) (criticized in Work of the Louisiana Appellate Courts, 1971-72 TermEvidence, 33 La.L.Rev. 318 (1972)).
Having no statutory formulation of the business records exception, this Court has in previous opinions[5] quoted with approval the following statement of the common law "regular entries in the course of business" exception:
"A permanent record made in the ordinary course of business, by a person unavailable for testimony, from personal knowledge of the facts recorded or from information furnished by one having a business duty to observe and report the facts, is admissible as proof of the facts recorded, in the absence of a strong motive to misrepresent, if the record is the first collected and recorded memorial." (Emphasis supplied.)
This Court has recognized that the applicability of the business records hearsay exception in criminal prosecutions depends, among other things, upon the unavailability of the person making the record. State v. Launey, supra (failure to establish unavailability of maker of one record held harmless, where the unavailability, "for all practical purposes," of the party making another record containing the same information was unquestioned); State v. Junegain, supra (the party making the recordan investigatorwas known and available to testify; the investigative report could not be properly admitted as a business record). Other cases, while not specifically addressing the question, present factual situations in which the party making the business entry could not, as a practical matter, be identified, making him "unavailable" for trial purposes. State v. Roche, supra (business records of a Las Vegas casino made at a time when the casino was under different management held admissible on proper foundation; the identity of the party actually making the business entries was apparently unknown); State v. Hodgeson, supra (telephone company computer print-out admitted as a business record upon proper foundation respecting reliability of the records; method of record keeping itself suggests that the identity of the individual who made each entry is unascertainable); State *1189 v. Lewis, supra (retail company inventory records admitted upon proper foundation of reliability; identity of the particular employee who made the entry apparently not determinable).
In two cases it appears we may have mistakenly approved the introduction of evidence under the exception in the absence of a showing that the record had been made by a person unavailable for testimony. Introduction of telephone slips from motels implicating the defendant in the crime was condoned in State v. Corey, supra, but the opinion fails to discuss whether or not the motel employees who filled out the slips were identifiable or available as witnesses. Likewise, in the earlier case of State v. Graves, supra, this Court sanctioned the admission of a "Firearms Record" as a regular entry made in the course of business. The identity of the employee who made the record was known, yet this Court failed to discuss whether this person was unavailable for testimony at trial.
Professor George Pugh, criticizing the decision in State v. Graves, made the following comments:
"The propriety of recognizing a business records exception to the hearsay rule in criminal cases, especially in circumstances such as this, seems very questionable. The business records exception is not expressly provided for by statute in criminal cases in Louisiana; in fact a literal interpretation of the statutes would appear to preclude its recognition. Similarly, the propriety of the business records exception in civil cases, and if so, its appropriate ambit, is a matter of considerable doubt.
"It is a fundamental principle of Anglo-Saxon law that a defendant should not be sent to prison on unsworn testimony, and that he should have the right to full cross-examination of all persons who give evidence against him. To the extent an out-of-court statement is admissible on behalf of the state in a criminal case as an exception to the hearsay rule, this principle is abridged. Unquestionably, certain exceptions to the hearsay rule are clearly desirable. Although some business records should be admissible in criminal cases under narrow, restricted, welldefined circumstances, the writer seriously doubts whether in criminal cases Louisiana should embrace a broad regular course of business exception. To do so might well violate defendant's constitutional right of confrontation." 33 La.L. Rev. at 318-19 (footnotes omitted).
The criticism is well taken. Both federal and state constitutions provide that an accused is entitled to confront the witnesses against him. U.S.Const. amend. VI; La.Const. of 1974, art. I, § 16; see also, La.Const. of 1921, art. I, § 9. This guarantee has been enhanced in our State's present constitution by its specific statement that an accused is also entitled to cross-examine the witnesses against him. La.Const. of 1974, art. I, § 16. Although the right of confrontation is not absolute, it is generally accepted that any qualification of the right must be justified by necessity and attended by strong assurance that evidence admitted thereunder will be reliable. E. g., State v. Hodgeson, 305 So.2d 421 (La.1974); Comment, Preserving the Right to ConfrontationA New Approach to Hearsay Evidence in Criminal Trials, 113 U.Pa.L.Rev. 741, 748-49 (1965); McCormick, Evidence, §§ 304-312 (2d ed. 1972).
Admittedly in employing the business records exception in civil cases, the trend has been to disregard the requirement of necessity altogether or to subordinate it to the demands of mercantile convenience. McCormick, Evidence, § 306 at 720; Comment, Business Records in Louisiana as an Exception to the Hearsay Rule, 21 La.L. Rev. 449 (1961); Comment, Preserving the Right to ConfrontationA New Approach to Hearsay Evidence in Criminal Trials, 113 U.Pa.L.Rev. 741, 762-64 (1965). In criminal trials, however, the accused's constitutional rights to confront and cross-examine the witnesses against him are of paramount concern. Therefore, in our view, use of the business records exception against the accused in criminal prosecutions should be limited to situations in which the person *1190 making the record is genuinely unavailable for trial, either because his identity is unknown or because diligent efforts have failed to procure his attendance as a witness. See, Baker, The Right to Confrontation, The Hearsay Rules, and Due ProcessA Proposal for Determining When Hearsay May Be Used in Criminal Trials, 6 Conn.L.Rev. 529, 544-55 (1974). Accordingly, we will adhere to our original conservative formulation of the business records exception in this and other criminal cases. Before the exception may be invoked by the State against the defendant, allowing introduction of a permanent record made in the ordinary course of business from personal knowledge of the facts recorded, or from information furnished by one having a business duty to observe and report the facts, it must be shown that the person who made the record is genuinely unavailable for testimony, that he had no strong motive to misrepresent, and that in all probability the evidence is trustworthy. Insofar as any of the expressions in State v. Corey, supra, and State v. Graves, supra, are in conflict with this view, they are expressly rejected.
Applying these principles to the instant case, we conclude there was insufficient showing that Dr. Lupin, the examining physician, was unavailable to give testimony at trial, and that as a consequence, the reports prepared in conjunction with Dr. Lupin's medical examination of the alleged victim, as well as Dr. Minyard's testimony based upon the reports, do not come within the business records exception to the hearsay rule. If application of a hearsay exception is contingent upon the unavailability of a witness, the State must prove that the witness is truly not available for trial despite diligent and good-faith efforts to produce him, or it cannot invoke the exception. State v. Jones, 325 So.2d 235 (La.1976); State v. Johnson, 261 La. 620, 260 So.2d 645 (1972). Simply because Dr. Lupin was to deliver a baby on the day of the trial does not mean that he was absolutely unavailable for testimony during the trial. Due to the gravity of the offense and the importance of the evidence to the State's case, the prosecution was obliged to exert great efforts in compelling attendance of the witness who was the source of the evidence. These efforts should have included, at least, seeking a recess if the witness' attendance could have been procured after a brief delay, taking the witness out of order, or even requiring that Dr. Lupin, an assistant coroner, prefer his public duty to his private practice by arranging for another physician to deliver the baby. The record fails to disclose that these or any other steps were taken by the State to obtain Dr. Lupin's attendance at trial.
Rather than allowing the easy admission of such documentary evidence in a case of this nature, it is imperative that assiduousness be demanded of the State to produce the witness who prepared the document, in order to avoid the very evils our constitutions are designed to prevent.
Many years ago the United States Supreme Court stated that
"[T]he primary object of the [confrontation clause of the Sixth Amendment] * * * was to prevent depositions or ex parte affidavits * * * being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." Mattox v. United States, 156 U.S. 237, 242-243, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895).
In the present case the only evidence which strongly tended to corroborate the woman's testimony to the occurrence of sexual penetration, an essential element of the crime, were the hearsay medical examination reports and double hearsay testimony of Dr. Minyard based thereon. Thus, an unsworn out-of-court statement by a person the defendant could not confront and cross-examine was admitted to prove a crucial issue in the case. We have no way of *1191 knowing if the jury would have returned the same verdict had the accused been given an opportunity to confront and cross-examine Dr. Lupin. Thus, the proceeding bore too great a resemblance to the trials by ex parte affidavit which the framers of our constitutions sought to abolish with the requirements of confrontation and cross-examination.
Consequently, we are compelled to the conclusions that the evidence in question was clearly hearsay, that it was admitted in violation of statutory law because it did not come within any exception to the rule against hearsay, that such introduction probably violated the confrontation clauses of both our federal and state constitutions, and that these errors by the trial court were definitely prejudicial to substantial rights of the accused.
For the foregoing reasons, defendant's conviction and sentence are set aside, and the case is remanded for a new trial consistent with the views herein expressed.
SANDERS, C. J., and SUMMERS, J., dissent.
MARCUS, J., dissents and will assign reasons.
MARCUS, Justice (dissenting).
In my view, the documents and coroner's testimony in regard thereto were admissible under the business records exception to the hearsay rule. Even assuming that the testimony and documents were hearsay and did not technically fall within one of the exceptions to the hearsay rule, they were offered merely for the purpose of establishing the presence of sperm in the victim's vagina, inferring that the victim had recent sexual intercourse, a fact which had been testified to by the victim of the rape. As such, the documents and the coroner's testimony were simply corroborative and cumulative of the victim's testimony. Accordingly, I consider the alleged error harmless. La.Code Crim.P. art. 921. I respectfully dissent.
NOTES
[1] Neither document, however, bears the signature of Dr. Lupin. One appears to have been prepared for his signature as "Examining Physician," but it is unsigned. The other is a laboratory report to Dr. Lupin signed by a medical technologist.
[2] La.R.S. 15:434 provides:

"Hearsay evidence is inadmissible, except as otherwise provided in this Code."
[3] The examination reports were hearsay; Dr. Minyard's testimony, based on the contents of these reports, amounted to "double hearsay." State v. Bray, 292 So.2d 697 (La.1974).
[4] In his "answer to assignment of error number seven," the trial judge stated:

"* * * Article 105 of the Code of Criminal Procedure provides that the coroner's reports are admissible into evidence. Under Article 8-1 [sic], the coroner includes any deputies and assistants. Their findings are similarly admissible."
[5] State v. Launey, supra and State v. Hodgeson, supra, quoting Comment, Business Records in Louisiana as an Exception to the Hearsay Rule, 21 La.L.Rev. 449, 451 (1961), which cited McCormick, Evidence, 596-613, §§ 281-90 (1954); 5 Wigmore, Evidence, 374-94, §§ 1517-33 (3d ed. 1940).