399 So.2d 564 (1981)
STATE of Louisiana
v.
George PRESTRIDGE.
No. 80-KA-2490.
Supreme Court of Louisiana.
May 20, 1981.
Rehearing Denied June 22, 1981.
*568 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John F. Rowley, Dist. Atty., Glenn Diaz, Abbott J. Reeves, Asst. Dist. Attys., for plaintiff-appellee.
Gary J. Dragon, Chalmette, Kirk A. Vaughn, Arabi, for defendant-appellant.
HALL, Justice Ad Hoc[*].
George Prestridge was charged by grand jury indictment with the aggravated rape of a 10-year-old girl in violation of LSA-R.S. 14:42. Following a trial by jury defendant was found guilty as charged, with 10 of the 12 jurors concurring in the guilty verdict. The mandatory sentence of life imprisonment without benefit of parole, probation, or suspension of sentence was imposed. Defendant appealed, presenting 36 assignments of error.
Defendant was convicted of the aggravated rape of the 10-year-old daughter of a woman with whom defendant, although married to someone else, had for several years maintained a romantic and sexual relationship. The mother was charged with the defendant in the same grand jury indictment *569 but her motion to sever for trial was granted by the trial court. The offense occurred during the early morning hours of March 19, 1978 at the trailer home of the woman. Defendant and the woman, who had been out drinking to celebrate the woman's birthday, returned to her house trailer at approximately 1:00 a.m. Present in the house trailer were the 10-year-old daughter, the woman's seven-year-old son, a teenage babysitter, and the babysitter's boyfriend.
Defendant and the woman retired to the woman's bedroom. After a short while defendant called to the victim to join them in the bedroom. After he repeated this request several times the child acquiesced. About 10 minutes later she returned crying to the front part of the trailer. At this point the victim's mother was heard to call "get back here, George wants you." The child, now hysterical, returned to the bedroom; she left the bedroom soon thereafter and proceeded to the bathroom. The babysitter tried to comfort the child but to little avail. The child continued to cry and returned to her room.
The next morning the babysitter awakened and spoke to the child at approximately 9:00 a.m. She asked the child what had so upset her earlier that morning. At first hesitant, the child finally stated "George hurt me like he did once before." The babysitter reported this to the child's mother who replied that the child was lying.
The child testified that on the night in question she was called back to her mother's bedroom. She found her mother passed out in the bed with the defendant lying beside her. The defendant placed the child in bed and removed her night clothes and underwear. He fondled her genitals and kissed her on the lips. He made her hold his penis in her hand to erection, turned her on her side and rubbed his erect penis around, up and down, and across her vagina for about five minutes. The child testified that his penis touched the entrance to the opening in her vagina but that defendant did not try to insert it all the way as he had on a previous occasion; however, it went in a "little bit" anyway. The episode continued for about five minutes. The child told defendant she had to go to the kitchen to get something to eat and he let her go.
After the episode was reported to the child's stepsister, the stepsister took her to the St. Bernard Parish coroner, Dr. Daigrepont, who examined the child five days after the offense. Dr. Daigrepont subsequently had a disabling stroke and was unavailable at the time of trial. His report was identified and filed into evidence. In the report the doctor noted a moderate amount of discoloration and a mild swelling of the vaginal lips. He noted that the hymen was not intact but had not been torn recently.
The defendant took the stand and denied that he had any contact with the child.
The child's mother also denied that the episode took place, testifying that she was not passed out and would have known if the events had occurred as testified to by the child. The mother testified that the only time the child was in the bedroom was when she brought the mother a glass of water at the mother's request.
Assignments of Error Nos. 1 and 20:
Defendant argues by these assignments of error that the verdict was contrary to the law and evidence for lack of proof of vaginal penetration.
At the time of the offense LSA-R.S. 14:42 (as amended by Acts 1977, No. 343) provided:
"Aggravated rape is a rape, heterosexual or homosexual, committed where the sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
"(1) Where the victim resists the act to the utmost, but whose resistance is overcome by force;
"(2) Where the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution; or
"(3) Where the victim is under the age of twelve years. Lack of knowledge of the victim's age shall not be a defense.

*570 "Whoever commits the crime of aggravated rape shall be punished by life imprisonment without benefit of parole, probation or suspension of sentence."
LSA-R.S. 14:41 (as amended by Acts 1975, No. 612) defined heterosexual rape as follows:
"Heterosexual rape is the act of sexual intercourse with a female person not the wife of, or judicially separated from bed and board from, the offender, committed without her lawful consent. Emission is not necessary; and any sexual penetration, vaginal or anal, however slight, is sufficient to complete the crime."
The prosecution is required to prove beyond a reasonable doubt every element necessary to constitute the crime charged. Louisiana Constitution 1974, Art. 1, §§ 2 and 16; State v. Searle, 339 So.2d 1194 (La.1976). Accordingly, a conviction based on a record wholly devoid of any relevant evidence of a crucial element of the offense charged is constitutionally infirm. State v. Peoples, 383 So.2d 1006 (La. 1980). In review of the sufficiency of the evidence to support a conviction, the reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. State v. Byrd, 385 So.2d 248 (La.1980); Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). It is not necessary that the state prove the accused's guilt beyond all doubt; rather, his guilt must be proved beyond all reasonable doubt. State v. Allen, 276 So.2d 868 (La. 1973). If his guilt is not established in compliance with that standard, it is the duty of the jury to acquit. State v. Anderson, 206 La. 986, 20 So.2d 288 (1944).
In this case it was necessary that the prosecution prove beyond a reasonable doubt the essential element of sexual intercourse, that is, sexual penetration, however slight. Defendant does not argue that the evidence was insufficient to establish the occurrence of the episode generally as related by the victim. The thrust of defendant's argument is that the victim's testimony itself negates the element of sexual penetration, or at most is vague and inconclusive, and is insufficient to justify a rational trier of fact concluding beyond a reasonable doubt that there was penetration.
Without quoting all of the testimony of the victim, a fair summary of her testimony is that defendant placed her in a position facing him with her legs over his. He placed his erect penis next to her vagina and moved it around, backwards and forwards, up and down, for about five or six minutes. Although he did not try to put it in like he did (unsuccessfully) on a previous occasion, it did "touch inside", "when he was moving it around he was getting into it", "going everywhere with it", "did have it in a little bit."
Based on the victim's testimony and her description of the physical contact between the defendant and herself, the jury, based on their common knowledge and understanding of the human anatomy, male and female, could rationally, and obviously did, conclude that there was sexual penetration, however slight. The evidence was sufficient to support the finding of sexual penetration beyond a reasonable doubt.
The testimony of Dr. Bertucci, called as a witness by the defense, does not, contrary to defendant's argument, negate the fact of penetration. The essence of the testimony of the doctor, who did not examine the victim, was that if there had been any penetration there would have been complete penetration, resulting in greater evidence of the act than disclosed by the coroner's report. The doctor's opinion was competent evidence to be considered by the jury but it in no way constituted conclusive or even persuasive medical evidence that there was not slight penetration.
These assignments of error are without merit.
Assignment of Error No. 2:
By this assignment defendant argues that his trial counsel was so ineffective as to deny him due process of law. The issue of ineffective assistance of counsel is *571 more properly raised by writ of habeas corpus. State v. Williamson, 389 So.2d 1328 (La.1980); State v. Malveaux, 371 So.2d 820 (La.1979). In apparent recognition of this rule no specific instances of error or inadequate representation are pointed out by the defendant. Accordingly, the issue will not be addressed by this court at this time.
Assignment of Error No. 3:
By this assignment of error the defendant complains that the statute under which he was charged was unconstitutionally vague. In particular, defendant claims that the definition of rape provided by LSA-R.S. 14:41 and 42 is constitutionally inadequate. Defendant argues that this point is dramatically demonstrated by the fact that the jury in this case interrupted its deliberations to request a legal definition of penetration. The court refused the request, advising the jury that the question of penetration is a question of fact which must be determined on the basis of the evidence and the use of their everyday knowledge and experience in life.
Article 1, § 13 of the Louisiana Constitution of 1974 provides that an accused in a criminal prosecution must be informed of the nature and cause of the charge against him. A statute is unconstitutionally vague if men of common intelligence must guess as to its meaning. State v. Cannon, 383 So.2d 389 (La.1980). Due process requires that the language of a statute have a generally accepted meaning sufficient to give adequate warning of the conduct proscribed and provide standards to enable judges and juries to fairly administer the law. Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 72 S.Ct. 329, 96 L.Ed. 367 (1952); State v. Cannon, supra; State v. McCoy, 395 So.2d 319 (La.1980); see also, State v. Dousay, 378 So.2d 414 (La.1979).
The terms "sexual intercourse" and "sexual penetration" are terms of common and generally accepted meaning sufficient to give adequate warning of the proscribed conduct. This assignment is without merit.
Assignment of Error No. 4:
By this assignment defendant complains that the trial court erred in overruling his objection to state witness Sharon Blanchard's testifying as to a statement made to her by the victim several hours after the rape.
Sharon Blanchard, the babysitter, testified that on the night of the offense the victim was called to her mother's bedroom only to return crying and obviously upset. The child was once again called to the bedroom and this time returned to the front of the trailer house crying hysterically. The babysitter became concerned and asked the child the cause of her distress, in her hysteria the child would not respond and went on back to her room and to bed. The next morning when they woke up the babysitter asked the child why she was so upset the night before and the child, who at first would not say anything, then said "George hurt me like he did once before."
The statement of which defendant complains is hearsay because it is an "out of court unsworn statement of a third person offered for the truth of its contents." State v. Elzie, 351 So.2d 1174 (La.1977). As such it is inadmissible. LSA-R.S. 15:434. However, under LSA-R.S. 15:447 statements forming part of the res gestae are excepted from the hearsay prohibition. LSA-R.S. 15:447 and 448 provide:
LSA-R.S. 15:447:
"Res gestae are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events. What forms any part of the res gestae is always admissible in evidence."
LSA-R.S. 15:448:
"To constitute res gestae the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction."
*572 The statement complained of was made at about 9:00 a.m. on the morning of the offense, which occurred between 1:00 and 2:00 a.m. A statement made eight hours after an event cannot ordinarily be considered to have been made under the immediate pressure of the event. However, this court has recognized that in the prosecution of sex offenses the better rule is that the original complaint of a young child is admissible when the particular facts and circumstances of the case indicate that the complaint was the product of a shocking episode and not a fabrication. State v. Adams, 394 So.2d 1204 (La.1981); State v. Noble, 342 So.2d 170 (La.1977). In Adams the prosecutrix was a five-year-old child who made statements identifying her stepfather, the perpetrator, to an adult woman some 10 hours after the complained of events. The statement was held admissible because the circumstances indicated that the statement was made at the first opportunity the child had to speak with a friendly adult.
In the instant case the child victim was visibly upset and crying after the incident, and remained in the house trailer in close proximity to the defendant. The only other adult present was the child's mother who was in bed with the defendant. Under the circumstances the child made her statement at the first reasonable opportunity the next morning. The trial court did not err in allowing the statement to go before the jury as part of the res gestae.
This assignment is without merit.
Assignment of Error No. 4(B):
Defendant complains by this assignment that the trial court erred in permitting a lay witness to express her opinion on the level of intoxication of the mother of the child at the time of the offense.
On re-direct examination the babysitter was asked where she would place the mother on a scale of 1 to 10, if 10 meant very intoxicated. She answered "9"; defense counsel objected. The trial judge noted that the answer had already been given but ordered the state to lay a foundation for the lay person's opinion. Accordingly, the prosecutor questioned the young witness about her familiarity with alcohol and the symptoms of intoxication. The witness revealed that both her parents and grandfather are heavy drinkers; she also claimed to have seen the mother drink to excess in the past. The court then permitted the state to ask the question on the level of intoxication. The witness again gave the answer "9".
This court has consistently held that, with rare exception, a witness can testify only as to facts within his knowledge. He may not testify as to any impression or opinion he may have. LSA-R.S. 15:463; State v. Lovette, 359 So.2d 163 (La. 1978); State v. George, 346 So.2d 694 (La. 1977). Nevertheless, as to subjects about which any person of experience might make an inference this court has recognized an exception to the general rule of LSA-R.S. 15:463. See State v. Roche, 341 So.2d 348 (La.1976). Accordingly, in the appropriate situation the witness may state "a natural inference from something he has observed," provided the witness states the basic facts upon which the inference is based. State v. George, supra, at p. 702.
The babysitter was competent to make a natural inference based upon what she had observed in the behavior of the mother. The state of intoxication of the mother at the time of the offense was relevant to the occurrence of the events at that time and also to her credibility as a witness. In any event, the testimony was merely cumulative of other testimony, including particularly the testimony of the mother herself who admitted to having "quite a bit" to drink that night. Any error in respect to this testimony was not sufficiently prejudicial to the defendant to warrant reversal.
This assignment is without merit.
Assignments of Error Nos. 5 and 8:
By these assignments defendant contends it was error for the trial court to permit the prosecution to ask leading questions of the victim and particularly to lead the victim by pointing to particular areas on a diagram from Gray's Anatomy depicting *573 a female vagina. A leading question is one which suggests to the witness the answer he is to deliver; ordinarily, such questions are prohibited when posed to one's own witness unless the witness is hostile or unwilling. La. R.S. 15:277. The purpose of the rule is to guard against the danger that a witness will acquiesce to a false suggestion. State v. Carthan, 377 So.2d 308 (La. 1979). Notwithstanding the general rule, a verdict should be disturbed on appeal only where there is a clear abuse by counsel, calculated to prejudice the rights of the accused. State v. Quincy, 363 So.2d 647 (La.1978). In any event, the matter is largely within the discretion of the trial judge; absent a palpable abuse of his discretion, a finding of reversible error is unwarranted. State v. Fallon, 290 So.2d 273 (La.1974).
In the case at bar the questions complained of as leading were posed to the victim who was then 12 years old. In State v. Carthan, supra, at p. 314 this court recognized that "the rule forbidding leading questions is not so rigid that it should not yield somewhat to the discretion of the trial judge in the examination of a very young or timid witness." The trial court here allowed the prosecution some leeway but also was careful that the state not abuse this latitude and carefully monitored the questioning. There is no indication in the record that the witness acquiesced to false suggestions. There was no clear abuse by the prosecution calculated to prejudice the rights of the accused nor was there an abuse of discretion by the trial court warranting reversal.
These assignments are without merit.
Assignments of Error Nos. 6 and 7:
By these assignments defendant complains that the trial court erred in allowing the state to use a diagram of a vagina in such a way as to inflame the jury. The diagram was a photocopy from Gray's Anatomy. Defendant concedes the diagram itself is not inflammatory; what is objectionable is the way it was used by the state in questioning the victim. In particular, defendant argues that it was unduly inflammatory for the child to draw on the diagram with a pencil in demonstrating the pattern of movement of defendant's penis against her vagina.
Defendant's appellate counsel notes in brief that the alleged error occasioned by the initial use of the diagram may have been waived by trial counsel's failure to properly and timely object. LSA-C.Cr.P. Art. 841. It is also to be noted that counsel stipulated his agreement to the initial use and introduction of the diagram. Defense counsel also correctly contends, however, that waiver of objection to the initial use of the diagram did not constitute waiver of objections to the state's subsequent alleged prejudicial use of the diagram in questioning the child, to which defense counsel made repeated objections. Review of the assigned errors is not precluded.
The rule concerning the introduction of demonstrative evidence is that the foundation laid must establish that it is more probable than not that the evidence is connected with the case and that the evidence has some relevance which the trial court considers sufficient to warrant its introduction. Ultimate connexity is a factual matter for determination by the jury. Diagrams generally are admissible to aid the jury in understanding testimony if shown to be an accurate representation of the subject matter in question and the ruling of the trial court relative to admissibility will not be disturbed on appeal unless there has been abuse of discretion. State v. Andrews, 369 So.2d 1049 (La.1979); State v. Drew, 360 So.2d 500 (La.1978). In considering whether demonstrative evidence is admissible over objection that it is unduly inflammatory the test to be applied is whether the proffered evidence is relevant to any material issue in dispute and, if so, whether its probative value exceeds its probable prejudicial effect. State v. Hawthorne, 345 So.2d 1170 (La.1977).
The diagram of the vagina was a reasonably accurate representation of the subject matter in question, was an aid to the jury in understanding the testimony *574 being given, and was not inflammatory of itself. The manner in which the diagram was used was a reasonable visual demonstration of the events which the witness was relating. The use of the diagram did not add to the inherently inflammatory nature of the subject matter and was not unduly prejudicial to the defendant.
The assignments are without merit.
Assignments of Error Nos. 9 and 11:
Defendant complains by these assignments that it was error to allow the victim to testify about her feelings in reaction to the offense and about her feelings for her mother. In the first instance the prosecutor asked the child: "While this was happening to you how were you feeling?" The victim responded: "Upset. I was crying." At this point defense counsel objected, arguing that the questioning was inflammatory; the trial judge overruled the objection. In the second instance the prosecutor asked: "Do you love your mother?" the child replied, "yes." To this the defendant made a relevancy objection.
Regardless of relevancy, neither answer was unduly prejudicial to the defendant. The testimony was of low probative value and could hardly be considered as having influenced the jury's verdict in this case.
These assignments are without merit.
Assignment of Error No. 10:
Defendant here complains that it was error to permit the victim to express an opinion on her mother's drinking habits and on her state of intoxication on the night of the offense.
The victim testified that her mother had begun drinking heavily after the death of the victim's father. She further testified that when she was called back to the bedroom she found her mother in bed with the defendant "knocked out", which she explained as having been drinking and passed out.
The witness was testifying as to matters within her personal observation from which she drew natural inferences.
This assignment is without merit.
Assignment of Error No. 12:
By this assignment defendant complains that the trial court erred in refusing defense counsel's request to admit into evidence a transcript of the victim's testimony given at a preliminary examination. At trial, during the course of defense counsel's cross-examination of the victim, the victim was questioned concerning allegedly inconsistent testimony given by her at the preliminary examination. Counsel specified the date of the hearing and read back to the victim the questions posed to her and her answers. In each instance the victim readily and unequivocally admitted making the prior inconsistent statements. At the conclusion of her testimony the defense sought to introduce the portions of the transcript of the preliminary examination which were used during the cross-examination of the witness. The trial court denied the request because counsel had read the questions and answers to the jury.
The defense and the state have the right to impeach the testimony and credibility of every witness sworn on behalf of the other side. LSA-R.S. 15:486. LSA-R.S. 15:493 provides as follows:
"Whenever the credibility of a witness is to be impeached by proof of any statement made by him contradictory to his testimony, he must first be asked whether he has made such statement, and his attention must be called to the time, place and circumstances, and to the person to whom the alleged statement was made, in order that the witness may have an opportunity of explaining that which is prima facie contradictory. If the witness does not distinctly admit making such statement, evidence that he did make it is admissible."
Thus, it is proper to impeach a witness at trial by proof of a prior contradictory statement made at a preliminary examination. However, if the witness distinctly admits making the prior contradictory statement, evidence that the statement was made is inadmissible. State v. Molinario, 383 So.2d 345 (La.1980); State v. Gomez, 365 So.2d 1313 (La.1978).
*575 Here, the verbatim questions and answers had been read to the jury by defense counsel from the transcript of the preliminary examination. Introduction of the typed transcript into evidence would have been only repetitive. The trial court did not err in refusing to admit the transcript into evidence.
This assignment lacks merit.
Assignments of Error Nos. 13, 14, 15, 16, and 17:
By these assignments defendant contends that the trial court erred: (1) in admitting into evidence and allowing the jury to examine a written report prepared by Dr. Roy Daigrepont, the St. Bernard Parish coroner, stating the results of his examination of the victim; (2) in finding that Dr. Daigrepont was "unavailable" to testify during the trial of the case for purposes of the business records exception to the hearsay rule; (3) in deleting a paragraph from the report; and (4) in allowing Dr. William Wolfe, currently acting coroner, to testify from the report and to state his opinion as to the trustworthiness of Dr. Daigrepont.
Five days after the offense complained of, the victim was taken by Dr. Roy Daigrepont by the victim's stepsister who explained to the doctor that the child had been molested. The doctor, at that time St. Bernard Parish coroner, examined the child. He wrote a letter in his capacity as coroner to the St. Bernard Parish district attorney's office, reporting the results of his examination. It is this letter or report that is the subject of these assignments of error. Dr. Daigrepont later testified before the grand jury which indicted the defendant.
Subsequent to the preparation of the report and testimony before the grand jury, Dr. Daigrepont suffered a stroke causing brain damage and impairment. It was clearly established at trial that Dr. Daigrepont was mentally and physically disabled and unable to testify at the trial of the case.
The report reads in full as follows:
"On Mar 18, 1978 during the early morning hours the above named female reports to have been sexually assaulted by a 31 yr old male named, George Prestridge while at the residence of her mother, [mother's name], in Violet, La.
"Examination of the Vulva reveals a moderate degree of reddish discoloration of the vaginal labiae and also of the vaginal orifice as well as mild edema and tenderness of the aforementioned tissues.
"Furthermore, she reports that two other females have been assaulted by the same male. She gave their names as [names], both from Mississippi.
"The above examination was conducted at 1 PM, March 23, 1978."
The report clearly constitutes hearsay evidence and is inadmissible unless it satisfies the requirements of one of the recognized exceptions to the hearsay evidence rule. LSA-R.S. 15:434; State v. Monroe, 345 So.2d 1185 (La.1977).
The report was allowed into evidence by the trial court under the business records exception to the hearsay rule.
The business records exception to the hearsay rule applicable in criminal cases was stated in State v. Monroe, supra, as follows:
"... Before the exception may be invoked by the State against the defendant, allowing introduction of a permanent record made in the ordinary course of business from personal knowledge of the facts recorded, or from information furnished by one having a business duty to observe and report the facts, it must be shown that the person who made the record is genuinely unavailable for testimony, that he had no strong motive to misrepresent, and that in all probability the evidence is trustworthy...."
Monroe was a prosecution for aggravated rape. The victim was examined by an assistant coroner and reports were prepared giving the result of the examination which disclosed the presence of seminal fluid in the vagina of the alleged victim. In the absence of the assistant coroner who performed the examination, the coroner was *576 allowed to identify the reports which were introduced into evidence over the defendant's objection. This court concluded there was an insufficient showing that the examining physician was unavailable to testify at trial and as a consequence, the reports as well as the coroner's testimony based on the reports did not come within the business records exception to the hearsay rule. Finding that such evidence was the only evidence which strongly tended to corroborate the victim's testimony as to the occurrence of sexual penetration, it was held that the admission of the evidence was definitely prejudicial to substantial rights of the accused and the conviction was set aside.
Monroe is clearly distinguishable from the instant case on its facts. Here, two doctors testified that the coroner who performed the examination and made the report had subsequently suffered a severely disabling stroke which made it impossible for him to testify at the trial. It was established with certainty that he was unavailable. It was also established that the report was a permanent record of the coroner's office made in the ordinary course of the coroner's business from personal knowledge of the facts gained by the coroner from his examination of the victim. As previously stated, the coroner who made the record was genuinely unavailable for testimony, he had no strong motive to misrepresent, and in all probability the report of the results of the examination is trustworthy.
It was not error to permit Dr. Wolfe, acting coroner at the time of trial, to testify concerning the report. He identified Dr. Daigrepont's signature on the report which was written on coroner's office stationery and observed that such reports are kept in the coroner's office in the course of the normal functions of the office. He further testified that Dr. Daigrepont would have had no reason to misrepresent his findings and that his findings were trustworthy. It was not error to allow him to so testify in order to establish the admissibility of the report.
The third paragraph of the report referring to a report by the victim of the assaults of two other females was ordered deleted from the copy of the report allowed into evidence and shown to the jury. Although defendant complains of the introduction of the report with the deletion, there is no showing of any prejudice that could have resulted to the defendant from the deletion. The contrary is obvious.
These assignments are without merit.
Assignment of Error No. 19:
Defendant argues by this assignment that the trial court erred in allowing the state to question the defendant about his relationship with the victim's mother, particularly questions about when was the last time he had sexual relations with the mother which drew the response of about two and one-half months before trial. No contemporaneous objection was made to this line of questioning and the alleged error cannot be availed of after verdict on appeal. LSA-C.Cr.P. Art. 841.
This assignment lacks merit.
Assignment of Error No. 21:
By this assignment defendant claims that the trial court erred in failing to prevent state witness, Herman Acosta, Jr., from repeating statements made to him by the mother who was a defense witness.
This line of questioning was not objected to at trial, despite the requirements of LSA-C.Cr.P. Art. 841, and is considered waived.
The assignment lacks merit.
Assignments of Error Nos. 22 and 23:
By these assignments defendant complains that it was error for the trial court to allow witness, Debra Roberts, to testify as to hearsay statements made by the mother, it was error not to strike the testimony of the witness, and it was error not to order a mistrial after the testimony was given.
The testimony defendant asserts is particularly objectionable was: "[the mother] told [the witness] that George had raped [the child]." No objection was made by defense counsel at that time. Eight questions and responses later defense counsel *577 objected and was sustained. Defense counsel at trial made no motion for a mistrial nor for an admonition. LSA-C.Cr.P. Arts. 841 and 771. The trial court sustained the objection on the basis that the testimony was hearsay as to the question of whether or not the defendant in fact committed the crime. The court allowed the testimony only as impeachment of the mother, who had previously been called as a defense witness. The objectionable testimony was given in rebuttal to explain, repel, counteract, or disprove facts given in evidence by the adverse party. LSA-R.S. 15:282; State v. Constantine, 364 So.2d 1011 (La.1978). The statement allegedly made by the mother to the witness was in direct contradiction to the mother's testimony at trial and was admissible to impeach and contradict her trial testimony. The testimony was inadmissible as hearsay to prove defendant's guilt, and this was clearly stated by the trial judge in his ruling on the untimely objection.
These assignments lack merit.
Assignments of Error Nos. 24 and 29:
By these assignments defendant argues that the charge to the jury concerning the credibility of witnesses was incorrect and that the instructions are otherwise unclear and vague.
The instruction specifically objected to reads as follows:
"If you believe that any witness in the case, either for the State or the defense, has willfully and deliberately testified falsely to any material fact for the purpose of deceiving you, then I charge you that you are justified in disregarding the entire testimony of such witness as proving nothing and unworthy of belief. You have the right to accept as true, or reject as false, the testimony of any witness accordingly as you are impressed with his or her veracity."
Although not entirely clear, it appears from the transcript of the conference held to consider jury charges that this charge was a special charge requested by the state to which the defense objected. Defense counsel requested an insertion to the effect that the jury has the right to reject the part which they believe to be untrue and the right to reject portions, or all or part of the testimony.
LSA-C.Cr.P. Art. 802 provides:
"The court shall charge the jury:
"(1) As to the law applicable to the case;
"(2) That the jury is the judge of the law and of the facts on the question of guilt or innocence, but that it has the duty to accept and to apply the law as given by the court; and
"(3) That the jury alone shall determine the weight and credibility of the evidence."
LSA-C.Cr.P. Art. 807 provides:
"The state and the defendant shall have the right before argument to submit to the court special written charges for the jury. Such charges may be received by the court in its discretion after argument has begun. The party submitting the charges shall furnish a copy of the charges to the other party when the charges are submitted to the court.
"A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given."
Defendant argues that the quoted charge violates the provisions of Article 802(3) that the jury alone shall determine the weight and credibility of the evidence, and also violates the second paragraph of Article 807 in that the requested special charge requires qualification, limitation, or explanation.
The quoted charge does not require the jury to take an all or nothing approach; that is, to either reject the witness's testimony in total or accept it in the same degree. The charge merely states the jury's right to do so and the second sentence in the complained of charge clearly indicates that the jury may accept or reject "the testimony of any witness accordingly *578 as you are impressed with his or her veracity." When read as a whole, and particularly in connection with other paragraphs of the general charge clearly pointing out that the jury is the exclusive judge of the facts and credibility of witnesses, the charge complained of is a fair statement of the jury's function as trier of fact and judge of credibility. An almost identical charge was described as "a trite and fundamental proposition" in State v. Linden, 154 La. 65, 97 So. 299 (1923).
This assignment is without merit.
Assignment of Error No. 25:
By this assignment of error the defendant contends that the trial court erred in instructing the jury that the following responsive verdicts may be returned: guilty, guilty of attempted aggravated rape, guilty of simple rape, guilty of forcible rape, guilty of attempted forcible rape, not guilty.
At the time of this prosecution LSA-C.Cr.P. Art. 814(A) provided for the responsive verdicts listed above to a charge of aggravated rape. Defendant argues, however, that the crimes of simple rape and forcible rape contain elements not found in the definition of the crime of aggravated rape of a female under the age of 12 years and, accordingly, are not constitutionally responsive. Defendant argues that the inclusion of these crimes as responsive verdicts in the charge was confusing to the jury and prejudicial to the defendant.
The arguably erroneous inclusion of lesser offense responsive verdicts in the charge to the jury cannot be said to have prejudiced the defendant where the jury returned a verdict of guilty of the offense charged. See State v. Beavers, 394 So.2d 1218 (La.1981); State v. Booker, 385 So.2d 1186 (La.1980). It is not demonstrated how the inclusion of the lesser offense responsive verdicts in the jury charge could have led to confusion which would have had a bearing on the jury's finding that the defendant was guilty of the offense charged.
This assignment lacks merit.
Assignment of Error No. 26:
Defendant contends by this assignment that the trial court erred in permitting the victim to testify concerning other crimes allegedly committed by the defendant. Specifically, defendant complains of the victim's repeated reference, sometimes in response to questions by the state and sometimes in response to questions by the defense, to an alleged prior sex act which would have constituted aggravated rape perpetrated by the defendant on the victim while she lived in New Orleans.
The victim testified that quite a while ago a similar event occurred while she was living in New Orleans East when the defendant tried to insert his penis all the way into her vagina but was unsuccessful in doing so. On that occasion the victim's mother was in bed with them passed out.
Notice as required by State v. Prieur, 277 So.2d 126 (La.1973) was given. No "other crimes" objection was made by defense counsel during the course of questioning of the victim about the incident at New Orleans East, nor was a motion for mistrial or admonition presented in accordance with LSA-C.Cr.P. Arts. 770 and 771. The absence of timely objection or motion for mistrial or admonition constituted a waiver of this alleged error. State v. Jones, 381 So.2d 416 (La.1980); State v. Noble, supra.
This assignment is without merit.
Assignment of Error No. 27:
By this assignment the defendant contends that the trial court erred in restricting his right to object to the prosecutor's closing and rebuttal arguments. The alleged restriction arose in the context of the following objection and ruling during the state's closing argument:
"He wants to knock Dr. Daigrepont who had a stroke and can't come and testify himself. Of course, he knocked Dr. Daigrepont before.
"MR. DOWD:
"I object. He's going beyond
"THE COURT:
"It's in evidence. Overruled.
"MR. DOWD:

*579 "That he knocked Dr. Daigrepont in the past, Your Honor?
"THE COURT:
"I ask you not to interrupt. You know the procedure."
Following this exchange there were no further references to the subject matter being discussed at the time of the objection and no further objections by defense counsel to any other parts of the state's opening or closing arguments.
LSA-C.Cr.P. Art. 774 provides:
"The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
"The argument shall not appeal to prejudice.
"The state's rebuttal shall be confined to answering the argument of the defendant."
Particularly reprehensible are comments by the prosecutor referring to matters allegedly within his personal knowledge but not in evidence. State v. Bretz, 394 So.2d 245 (La.1981); State v. Harrison, 367 So.2d 1 (La. 1979). This is because this type of argument improperly attempts to add to or subtract from the evidence in the record through the influence of the prosecutor's position. Out of respect for the prosecutor the jury may give greater weight to these observations than to the actual evidence and determine innocence or guilt on the basis of the prosecutor's opinion. State v. Harrison, supra.
It appears from the record that the complained of comment refers to matters not in evidence; there was no evidence that the witness referred to, Dr. Bertucci, had "knocked Dr. Daigrepont before". Consequently, the remark appears improper. Still, it does not appear to be of the type which would clearly influence the jury to the defendant's prejudice. This court has held that a verdict will not be overturned on the basis of improper argument unless the court is thoroughly convinced that the jury was influenced by the remarks and that they contributed to the verdict. State v. Hicks, 395 So.2d 790 (La.1981). Moreover, the trial judge charged the jury that statements made by an attorney at anytime during trial or argument did not constitute evidence or proof of facts. Under the circumstances the remark itself would not warrant reversal.
As to the complaint that the trial court effectively cut off defense objections to the state's argument, precluding contemporaneous objections under LSA-C.Cr.P. Art. 841, the mild instruction by the trial court could hardly be taken to have had that effect. The court ruled on defense counsel's objection and it was only after counsel pursued the objection after it had been ruled upon that the court asked counsel not to interrupt. No objection was made to this ruling, if it was in fact a ruling. Counsel was not deprived of his right to make contemporaneous objections during the argument.
The assignment lacks merit.
Assignment of Error No. 28:
Defendant contends by this assignment that the trial court erred in allowing the prosecutor to make unfounded, prejudicial, irrelevant, and inflammatory statements during rebuttal argument. Defendant urges that these statements warranted a mistrial; he concedes, however, that these comments were not objected to nor was a mistrial or admonishment requested. We address this assignment despite defendant's failure to comply with the requirements of LSA-C.Cr.P. Arts. 771 and 841 out of concern that the trial court ruling addressed in the previous assignment of error may have led defense counsel to believe, rightly or wrongly, that he was not allowed to enter objections during or at the close of arguments.
The defendant complains of the following statements:
"I want you to know during Mr. Dowd's entire argument and presentation to you he didn't once say that George Prestridge didn't do it. Not one time. He didn't say that. He just said that the *580 evidence cast reasonable doubt. He didn't say he didn't take his organ and rub it on the private parts of Gina Stiglet...
"All we have heard in the defense argument is that `Let's assume Gina Stinglet's story is true. I want you to assume it's true.' I think you know it's true. It happened. No one said that it didn't happen. No one says he didn't do it. All they are telling you is that what he did is not a rape...
"And, you figure it out. Mr. Dowd is saying that it's not complete rape and then starts talking to you about attempt. In other words, he is saying, `Well, my client did what he did, took his penis and rubbed it all around, but never penetrated.' He attempted to penetrate. He attempted to rape, which is a responsive verdict as Judge Gauthier would instruct you. I proved attempted rape. You can go through his argument and see through it and see through it and he will admit I proved that much...
"I proved that there has been vaginal penetration, slightly. I am glad it's slight. I wouldn't want to see her ripped open by a thirty-three year old man. I am happy it's that way. I am happy that I am arguing to you that it's however slight. And, I know in my heart you know it was however slight. By considering from your common sense and from the evidence in the stand about what when it got big and hard in her little hand, it was only then that he took it and rubbed it."
The argument of counsel must be confined to evidence admitted, to the lack of evidence, to conclusions of fact that counsel may draw therefrom, and to the law applicable to the case; in any event, the argument must not appeal to prejudice. The state's rebuttal must be confined to answering the argument of the defendant. LSA-C.Cr.P. Art. 774. Upon request of the defendant or the state the court may in its discretion grant a mistrial or an admonishment, premised upon argument by the opposing party which is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant or the state in the mind of the jury. LSA-C.Cr.P. Art. 771. Finally, the trial judge has wide discretion in controlling the scope of argument. State v. Lee, 340 So.2d 180 (La. 1976).
In the present case, the thrust of the complained of rebuttal argument concerns the issue of sexual penetration, an essential element of the charged crime. This rebuttal was confined to answering the argument of defense counsel which was directed in great part to the contention that whatever may have happened on the day of the offense, no penetration was achieved. Considering the nature of the offense charged any discussion of the facts might tend to "create prejudice against the defendant;" however, the state's argument was reasonably restrained and was restricted to relevant, material issues.
This assignment is without merit.
Assignment of Error No. 30:
By this assignment defendant contends that the trial court erred in permitting the jury to take state exhibit "1", the diagram of the vagina, into the jury room for use in their deliberations.
The record contains no contemporaneous objection to this action, despite the requirements of LSA-C.Cr.P. Art. 841. In fact, the record suggests that the exhibit was given to the jury by agreement of the prosecutor and counsel for the defense. The jury interrupted its deliberations to request that it be allowed to review the exhibit. The trial court stated: "With permission of both state counsel and the defense counsel I will hand this to the foreman." No objection was made. There was no violation of the court's discretion in granting the jury request. LSA-C.Cr.P. Art. 793.
This assignment is without merit.
Assignment of Error No. 31:
By this assignment defendant contends that the trial court erred in refusing to give the jury a legal definition of the word "penetration". The record contains no contemporaneous objection to this action.
*581 As previously stated in connection with the discussion of Assignment of Error No. 3 the words sexual penetration have a common-sense well-understood meaning; hence, no legal or technical definition was needed or proper.
This assignment is without merit.
Assignment of Error No. 32:
Defendant complains by this assignment that the trial court erred in denying his pretrial motion for the appointment of an expert medical witness at state expense to evaluate the state's medical evidence. The defendant argues that the coroner's medical report did not necessarily indicate that the victim had been raped, however, the coroner's report might be misunderstood if left unexplained. Because of the refusal to appoint a medical expert at state expense defendant had to resort to using a family doctor who was subject to impeachment because of his relationship to the defendant's family.
Furnishing counsel to the indigent defendant is not enough if counsel cannot secure information on which to construct a defense. State v. Harris, 383 So.2d 1 (La.1980); State v. Madison, 345 So.2d 485 (La.1977); see also United States v. Johnson, 238 F.2d 565 (2d Cir. 1956). This court has recognized that the state should supply funds upon a showing by the defense that the indigent accused is unable to obtain existing evidence crucial to the accused. State v. Madison, supra. When the issue is considered on review the question becomes whether the denial of funds has substantially prejudiced the defendant at the trial. State v. Harris, supra.
In the case at bar, the defendant failed to carry the burden as set forth in Harris. The defense obtained and presented a qualified medical witness, accepted as an expert by the court. It is not demonstrated that an independent medical expert could have obtained or presented any medical evidence in addition to or beyond that presented by Dr. Bertucci. The denial of the defendant's motion did not substantially prejudice the defendant at the trial.
This assignment is without merit.
Assignment of Error No. 33:
By this assignment the defendant complains that the trial judge erred in not granting his motion for a new trial.
In support of this assignment defendant reurges several of the issues urged and discussed in the previous assignments of error. Defendant finally contends that although no one of the assigned errors may individually warrant reversal of his conviction, the cumulative effect has prevented the defendant from receiving a fair trial. It is urged that a new trial would serve the ends of justice and should be ordered by the court.
LSA-C.Cr.P. Art. 851(5) provides:
"The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
"The court, on motion of the defendant, shall grant a new trial whenever:...
"(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right."
We have carefully examined each of the errors assigned by defendant and found them to be without merit. Likewise, the cumulative effect of the meritless assignments of error do not indicate that injustice has been done the defendant or that the ends of justice would be served by the granting of a new trial, nor do they warrant reversal of the conviction. See State v. Sheppard, 350 So.2d 615 (La.1977).
This assignment is without merit.
Assignment of Error No. 34:
Defendant complains by this assignment that the trial court erred in denying him bail pending appeal.
LSA-C.Cr.P. Art. 314 makes bail discretionary with the judge if the sentence which may be imposed is imprisonment exceeding *582 five years. The denial of bail pending appeal in this case where the defendant has been mandatorily sentenced to life imprisonment at hard labor was within the sound discretion of the trial judge. See State v. Tucker, 354 So.2d 521 (La.1978). In any event, the issue is moot at this point. See State v. McDaniel, 340 So.2d 242 (La. 1976).
This assignment is without merit.
Assignment of Error No. 35:
By this assignment defendant complains that the mandatory sentence of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence for the crime of aggravated rape is unconstitutionally cruel, unusual, and excessive under the Eighth Amendment to the United States Constitution and Art. 1, § 20 of the Louisiana Constitution.
Counsel forcefully argues that mandatory sentences established by the legislature are subject to judicial review under the constitutional provision, that not all convictions for aggravated rape under LSA-R.S. 14:42 which proscribes varying types of behavior warrant the severe mandatory sentence of life imprisonment, that the mandatory sentence precludes individualized treatment of the offense and the offender, and that the sentence is particularly excessive in this case which did not involve the more brutal acts normally associated with the commission of the crime of aggravated rape.
This court is not prepared to hold that the mandatory life sentence imposed under LSA-R.S. 14:42 does not fall within the state legislature's prerogative to determine the length of the sentence imposed for crimes classified as felonies. See and compare State v. Mallery, 364 So.2d 1283 (La. 1978)distribution of heroin, LSA-R.S. 40:966; State v. Terrebonne, 364 So.2d 1290 (La.1978)distribution of heroin, LSA-R.S. 40:966 A; State v. Daniel, 378 So.2d 1361 (La.1979)second degree murder, LSA-R.S. 14:30.1; State v. Brooks, 350 So.2d 1174 (La.1977)second degree murder, LSA-R.S. 14:30.1.
This assignment is without merit.
Assignment of Error No. 36:
Defendant contends by this assignment that the trial judge erred in denying his motion for access to a transcript of the grand jury testimony of each and every witness the state intended to call at the trial of the case. The basis of the motion was the alleged understanding of the defendant that the testimony of the unnamed witnesses before the grand jury differed from the testimony of the same witnesses at a later preliminary examination.
At the hearing on the motion it was established that only three witnesses testified before the grand jury: the victim, the victim's stepsister, and Dr. Daigrepont. At the conclusion of the hearing the trial court ordered the state to provide the defense with a copy of the victim's testimony. The defense apparently already had a copy of Dr. Daigrepont's testimony. The trial court denied the request insofar as the testimony of the stepsister was concerned, finding no adequate basis for disclosure thereof.
This court has consistently held that a defendant is not entitled to production of a transcript of the secret grand jury proceedings against him. LSA-C.Cr.P. Art. 434; State v. Sheppard, supra; State v. Williams, 310 So.2d 528 (La.1975). The transcript of grand jury proceedings may not be used at trial even in the conduct of cross-examination. The purpose of this rule is not to protect a defendant or witness at a subsequent trial, but to encourage the free disclosure of information about crime.
This assignment lacks merit.
For the foregoing reasons defendant's conviction and sentence are affirmed.
NOTES
[*] Judges Pike Hall, Jr., Charles A. Marvin, and Jasper E. Jones of the Court of Appeal, Second Circuit, participated in this decision as associate justices ad hoc; joined by Associate Justices Pascal F. Calogero, Jr., James L. Dennis, Fred A. Blanche, Jr., and Harry T. Lemmon.