427 So.2d 1254 (1983)
STATE of Louisiana, Appellee,
v.
Nathaniel SMALL, Appellant.
No. 15162-KA.
Court of Appeal of Louisiana, Second Circuit.
February 22, 1983.
*1257 Raymond L. Cannon, Tallulah, for appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Baton Rouge, James D. Caldwell, Dist. Atty., Tallulah, John D. Crigler, Asst. Dist. Atty., St. Joseph, for appellee.
Before PRICE, HALL and SEXTON, JJ.
HALL, Judge.
Defendant, Nathaniel Small, appeals his conviction and sentence of 45 years at hard labor without benefit of parole, probation, or suspension of sentence for the commission of armed robbery in violation of LSA-R.S. 14:64. We affirm both the conviction and sentence.

Facts
On January 12, 1981, Mary Lou Nolden, housekeeper for Mr. and Mrs. L.T. Collins of St. Joseph, Louisiana, was robbed at gunpoint while engaged in her duties at the Collins residence. Mrs. Nolden identified one Vecy Bates, Jr. from a photographic lineup as the man who forced his way into the Collins residence and bound and blindfolded her. Bates was accompanied by another man who helped him ransack the house. However, Mrs. Nolden could not identify the other man because she saw only his shoes and pants (up to the knee area) prior to being blindfolded. She listened to the conversation between the men as she was being bound and to the noise they created afterward as they searched the house for valuables. Seven dollars in cash was taken from Mrs. Nolden's purse. The robbers also took numerous items of value from the Collins residence, including diamond rings, other jewelry, and expensive firearms. The next morning law enforcement officers arrested defendant at his residence in Harvey, Louisiana, and recovered many of these same items.
Since there was no direct evidence that defendant was the second man who entered the Collins house, the state offered circumstantial proof that defendant was a principal in the commission of the offense.
That evidence which the state offered can be summarized as follows. Victor Mahoney, a Tensas Parish Deputy Sheriff, testified that on January 12, 1981, at about 11:14 a.m., he was informed that an armed robbery had occurred at the Collins residence. Accompanied by several other officers, he arrived at the scene and interviewed Mrs. Nolden concerning the particulars of the offense. Mahoney testified that certain items were reported to him as having been stolen from the Collins residence. He also testified that Mrs. Nolden reported to him that $7 in cash had been taken from her purse. Mahoney testified that Mrs. Nolden informed him that she was robbed by two black men in a white pickup truck.
Deputy Mahoney further testified that, after having broadcast an alert to the neighboring local law enforcement agencies, he received a report that Shirley Rollins Taylor, defendant's cousin, had seen a white pickup truck in the immediate vicinity of the Collins residence and had identified Nathaniel Small as an occupant of the truck. Mahoney was also informed by one Jessie Clark that he had sold Nathaniel Small and another man $5 worth of gas at a neighboring service station early that morning. Clark informed Mahoney that the men were driving a white pickup truck. Pursuant to this information an arrest warrant was issued and defendant was arrested the next morning.
Mahoney also testified that Mr. and Mrs. Collins identified the items recovered at defendant's residence as items stolen from their residence in the January 12 robbery.
Among the items found at defendant's residence were two stocking caps. In executing a search of defendant's residence pursuant to a search warrant, these caps were seized. That seizure was based upon *1258 information that the robbers had worn stocking caps. Mahoney testified that Mrs. Nolden reported to him that the individuals in the white pickup truck who had come to the Collins residence that morning, prior to the robbery, had worn dark and red colored stocking caps. From a photographic lineup Mrs. Nolden identified one of those individuals as Vecy Bates, Jr. While she could see there was a second person sitting in the truck upon the initial visit to the house, Mrs. Nolden could not identify that person.
Mary Lou Nolden testified that this initial visit by the robbers occurred at about 9:00 a.m. or a few minutes thereafter. Mrs. Nolden testified that the occupants of the truck wore dark and red colored stocking caps similar to those found in defendant's residence. Mrs. Nolden testified that Vecy Bates, Jr. returned in the same white pickup truck a short time later (about 9:30 a.m. or 10:00 a.m.) and forced his way into the house. Mrs. Nolden testified that Bates was accompanied by the same individual as before. However, she was still unable to identify that person sitting in the truck.
After the robbers left, Mrs. Nolden managed to get her blindfold off and call out to a neighbor for help. These actions, according to her testimony, occurred at approximately 11:30 a.m. Shortly thereafter the police were called from a neighbor's residence.
Mrs. Nolden testified that she had known Nathaniel Small since he was a child, could readily identify him by sight and that he also knew her. Mrs. Nolden testified that she also knew defendant's mother, a local resident, and brother. She further testified that when the second robber entered the house he remained behind her and out of her range of vision until she was blindfolded except for the glance of his shoes and pants she managed. Mrs. Nolden testified that she did not know if the second robber was intentionally attempting to avoid her sight.
Carol Jenkins, a member of the family living closest to the Collinses (approximately one-half to one and one-half miles away but within sight of the Collins house) at the time of the robbery, testified that, early on the morning of the robbery, she received a telephone call for her uncle, Henry James Jenkins. She testified that the caller identified himself as Ernest Armstrong, another nearby neighbor. She testified that her uncle, upon talking with the caller, told her the caller was Nathaniel Small, not Ernest Armstrong. Additionally, Ms. Jenkins testified that, as she left the house on her way to the bank that morning, she saw a white pickup truck parked in front of the Collins residence. She testified that the truck she saw was not the same color as Mr. Collins's truck and that, to her knowledge, the truck did not belong to the Collins family. The truck was observed by Ms. Jenkins sometime before noon on the day of the robbery.
Jessie Lee Clark, a gas station attendant, testified that he sold defendant and another man $5 worth of gas at a station in the vicinity of the Collins residence on the morning of the robbery at around 8:00 a.m. or 8:30 a.m. He further testified that although he noticed a passenger in the truck with defendant and that the passenger was wearing a dark colored stocking cap, he could not identify the passenger as Bates.
Fatheree Matthews, a part-time store clerk, testified that, on the morning of the robbery, a black man came into the store where she worked and asked to buy $7 worth of gas. This store is located in the immediate vicinity of the Collins residence. The time of the man's appearance was "midmorning" (about 10:00 a.m. or 10:30 a.m.). Mrs. Matthews could not identify Bates or defendant as the man who asked to purchase gas. She did note, however, that the individual in question was wearing a dark colored stocking cap and was driving a white pickup truck.
Shirley Rollins Taylor, defendant's cousin, testified that she saw a white pickup, traveling at a high rate of speed, run a stop sign on the morning of the robbery at around 10:50 a.m. The stop sign which it ran is at an intersection in the immediate vicinity of the Collins residence. The truck turned onto Highway 65 and proceeded south. Mrs. Taylor noted that the truck had two *1259 occupants, one of which was wearing a dark colored stocking cap. However, Mrs. Taylor testified that she could not identify either of the occupants.
Ernest Armstrong, a neighbor of the Collinses and a former schoolmate of defendant and Bates, testified that defendant and Bates came by his residence twice in January 1981. On the first visit, a night or two prior to the robbery, defendant used Armstrong's telephone. On the second visit, on the morning of the robbery before 9:00 a.m., defendant asked to use Armstrong's phone again. Defendant entered Armstrong's residence while Armstrong remained outside and talked with Bates. A few minutes later, defendant returned and left with Bates. Armstrong, after reference to his phone bill which was introduced into evidence, testified that on the second visit defendant called the Jenkins residence.
Henry James Jenkins, a resident of the household nearest the Collinses, a former schoolmate of defendant, and a part-time employee of the Collinses, testified that defendant called him at 1:00 in the morning a day or two prior to the robbery. This testimony is corroborated by that of Percy Jenkins, Henry's father, who answered the phone at that time. Professing to have car trouble, defendant convinced Henry Jenkins to meet him at a highway intersection nearby. Upon reaching that location, Jenkins found defendant in a white Ford pickup with the motor running. Jenkins testified that defendant got out of the truck, walked back to Jenkin's vehicle and asked him where he could make some fast money and where Armstrong lived. Jenkins saw another man in the white truck but was unable to identify him.
Henry Jenkins also testified that defendant called him on the morning of the robbery between 9:00 and 10:00 and asked him if Mr. Collins was home. Jenkins responded that Mr. Collins was usually at work by that time of the morning. Jenkins further testified, upon being shown the phone bill which indicated a call to his residence from Armstrong's at 8:52 a.m. on the morning in question, that the time shown on the phone bill was consistent with his recollection of the time when defendant called.
Trooper Robert Vittitoe, one of the officers who arrested defendant at 1145 Inca Street, Harvey, Louisiana, the address shown on defendant's vehicle registration, testified that both defendant and his brother, as well as two small children, were present at the residence when the arrest was made. He also testified that defendant's sister, Charlotte Mason, later appeared at the residence.
Trooper Carney Burcham testified that defendant's sister informed him the bedroom in which the items stolen from the Collins residence were recovered was Jessie Small's bedroom. He further testified that there were no locks on the interior doors of the Inca Street residence and that everyone residing there had free access to the bedroom where the stolen property was found. He also testified that the Inca Street residence had two or three bedrooms. The stolen items were found in a tan, zippered satchel in the bedroom. Burcham also testified that, at the time of defendant's arrest, the suspects in the robbery investigation were defendant, his brother, and Bates. Burcham testified that, through additional investigation conducted by Detective McKenzie, defendant's brother was eliminated as a suspect. He also testified that defendant's sister told him Jessie Small was at work on the Monday the robbery occurred. Burcham testified that the white pickup truck Bates and the other man were driving at the time of the robbery was never located during the robbery investigation. No such vehicle was registered to Bates or defendant by name.
Detective McKenzie testified that he showed Mrs. Nolden a photographic lineup containing a picture of Jessie Small for the purpose of eliminating him as a suspect. He further testified that Mrs. Nolden did not recognize anyone in the lineup as anyone she had seen during the robbery. McKenzie also testified that, through his investigation, it was determined Jessie Small was in New Orleans at the time of the robbery. He also testified Mrs. Nolden *1260 informed him that, upon the second visit to the Collins house by the men in the truck, the occupants wore a dark and a light colored stocking cap.
Detective Clifton Sloane of the New Orleans Police Department testified that, while working undercover in a "sting" operation in New Orleans, he purchased goods stolen from the Collins residence from Craig Coleman, a known "fence" who had made sales of stolen merchandise to him on numerous occasions while the "sting" operation was being conducted. Sloane also testified that Coleman informed him he was selling the items for someone else. Additionally, the entire transaction was recorded on a videotape which was played for the jury and admitted into evidence. Craig Coleman testified that he sold the guns and other items in question to the "sting" operation on January 14, 1982, for Vecy Bates, Jr.
Mr. and Mrs. L.T. Collins identified the items recovered by the "sting" operation and in defendant's Inca Street residence as items stolen from their house on January 12, 1981.

Assignments of Error
The essence of defendant's numerous assignments of error is that much of the state's evidence was inadmissible hearsay, and that the properly admissible evidence offered by the state is insufficient to support defendant's conviction and sentence.
Of the 18 errors assigned by defendant, only 13 were briefed. Since the other five, Nos. 1, 2, 5, 14, and 18, were neither briefed nor argued before this court we consider them to have been abandoned. State v. Blanton, 325 So.2d 586 (La.1976); State v. Carlisle, 315 So.2d 675 (La.1975). A discussion of the remaining assignments of error follows.

Assignment of Error No. 3
Defendant contends the testimony of Deputy Sheriff Vic Mahoney that defendant was identified by his cousin, Shirley Rollins Taylor, as an occupant of the "getaway" vehicle constituted prejudicial hearsay, the improper admission of which requires reversal. This contention is without merit.
The testimony in question is not hearsay because it was not offered to prove the truth of the assertion it contains. McCormick on Evidence, § 246 (Cleary Ed.1972). The testimony was offered merely to show such a report was made to the officer and what action was taken pursuant to that report. The testimony was properly admissible for that purpose. State v. Turner, 392 So.2d 436 (La.1980). The trial judge promptly admonished the jury that the testimony was to be considered only in that light.
Even if we assume, for the sake of argument, that the testimony in question is hearsay which should have been excluded, we find no prejudice requiring reversal resulting from its admission. Mrs. Taylor testified at trial that she did not identify defendant as a passenger in the "getaway" vehicle. Her testimony was sufficient to remove any prejudice suffered by defendant due to Mahoney's testimony. LSA-C. Cr.P. Art. 921; State v. Johnson, 381 So.2d 436 (La.1980); State v. Johnson, 352 So.2d 1285 (La.1977).
This assignment of error is without merit.

Assignment of Error No. 4
Defendant assigns as error the admission of testimony by Deputy Mahoney that Mrs. Nolden, the housekeeper, described to him the stocking caps worn by the intruders as dark and red in color. While the challenged testimony could be considered as properly admitted under the rationale of State v. Turner, supra, we hold, in any event, its admission to be harmless error. Mrs. Nolden testified at trial and was subjected to cross-examination concerning this matter. LSA-C.Cr.P. Art. 921; State v. Johnson, supra; State v. Johnson, supra.
This assignment of error is without merit.

Assignments of Error Nos. 6 and 7
These assignments, as expressed in defendant's brief, are as follows:
No. 6: The elicitation by the State of statements made by the defendant to a *1261 third party that he wished to use the telephone was prejudicial hearsay (295-297).
No. 7: The reference of the State's witness to the contents of the phone bill to determine the destination of the call and the Court's admission of this phone bill as evidence was prejudicial hearsay (297-301).
We find assignment No. 6 to be without merit because the evidence in question is not hearsay. The essence of Ernest Armstrong's testimony is that defendant asked to use his phone, entered his house, remained a few minutes, came out again and left shortly thereafter. Armstrong testified he did not see defendant use his telephone. The evidence was admitted merely to show that such a request was made and what defendant's subsequent actions were as observed by the witness.
This assignment of error is without merit.
As for assignment No. 7, we agree with defendant's contention that Armstrong's phone bill should not have been admitted into evidence. From the context in which the phone bill was presented, it appears it was offered as an assertion of the fact that defendant called the Jenkins residence from the Armstrong residence at shortly before 9:00 a.m. on the morning of the robbery. Since the bill was offered for the truth of the matter asserted, it was hearsay evidence which should have been excluded unless admissible under some exception to the hearsay rule.
The bill was admitted into evidence under the business records exception to the hearsay rule. However, this admission was erroneous because an insufficient foundation was laid to render the document admissible under that exception. State v. Hodgeson, 305 So.2d 421 (La.1974); State v. Monroe, 345 So.2d 1185 (La.1977). The state did not call the person who prepared the records to testify. However, that requirement is inapplicable in a case such as this where that individual is "unavailable" because the "... method of record keeping itself suggests that the identity of the individual who made each entry is unascertainable...." State v. Monroe, supra at 1188. Nevertheless, the foundation is inadequate because no testimony was offered to show the reliability of the method by which the records were prepared. Therefore, the phone bill should have been excluded.
However, we hold the admission of the phone bill into evidence and Armstrong's reference to it during his testimony to be harmless error because both these events are merely cumulative and corroborative of the testimony of Henry and Carol Jenkins concerning defendant's phone call on the morning of the robbery.
From the totality of the admissible evidence, even in the absence of the admission of the phone bill and any subsequent reference to it, the jury could reasonably have concluded that defendant called the Collinses' next-door neighbor shortly before the robbery in an attempt to ascertain the Collinses' whereabouts. Since we find the challenged evidence to be merely corroborative of other admissible evidence, we hold that no reversible error occurred through its admission. LSA-C.Cr.P. Art. 921.
This assignment of error is without merit.

Assignments of Error Nos. 8 and 9
Under assignment of error No. 8, defendant alleges reversible error occurred from the admission of the contents of a telephone call between Henry Jenkins, a former schoolmate of defendant and part-time employee of the Collinses, and defendant. We find no such error.
The phone call in question occurred at about 1:00 a.m. a day or two before the robbery. The relevant testimony concerning the call is as follows:
"Q. Okay. Mr. Jenkins, if we can go back to January of 1981, could you describe to the ladies and gentlemen of the jury if you had any contact with Nathaniel Small at that time?
"A. Yeah, I had some contact with him. He supposed to have had some trouble with his car or truck or whatever, you know. So I got a phone call one morning about, one morning it was around about one o'clock I would say.

*1262 "MR. CANNON: Objection, Your Honor. This calls for hearsay.
"MR. CALDWELL: That's not hearsay. That's not calling for hearsay.
"THE COURT: The Court's going to overrule the objection and let the evidence in. The man can say that he received a telephone call. We'll go into whether or not he recognized the voice.
"MR. CALDWELL: Okay.
"MR. CANNON: Is my objection noted, Your Honor?
"THE COURT: Let the objection be noted.
"MR. CANNON: Thank you.
"Q. Mr. Jenkins, could you describe exactly how you got the call? Who answered the phone and so forth.
"A. Well, when I got the call, I was in bed and my father called me and told me I had a telephone call from Nathaniel. So I just assumed it was Nathaniel Small, because that's the only one I knew. So I went to the phone. He supposedly had had some car trouble, and I was supposed to meet him at, go down there and see him at Goldman's Intersection near Waterproof. When I got there, the truck was there. It looked like a Ford, a white Ford truck and it was running. And he got out of there and came back and he wanted to know where he could make some fast money, and he wanted to know where Armstrong lived.
"Q. Okay. Did you recognize the voice on the phone?
"A. Yes, I recognized his voice.
"Q. Whose voice was on the telephone that morning at about one o'clock?
"MR. CANNON: Your Honor, I'd like to make sure that this objection is preserved for the record. That first objection was continuing as to whatever would be said.
"THE COURT: Let the objection be noted.
"MR. CANNON: Thank you.
"Q. Go ahead, please sir.
"A. Nathaniel Small.
"Q. Okay. Do you have any doubt about that?
"A. No, I don't think I have any doubt." (Tr. pp. 312-313)
Defendant contends the testimony set forth above constitutes prejudicial hearsay requiring reversal. That contention is without merit.
The testimony of Henry Jenkins that he received a phone call and recognized the caller's voice as defendant's is not hearsay. Jenkins was properly testifying as to facts within his knowledge. Therefore, the admission of his testimony upon that basis was proper. LSA-R.S. 15:463. Additionally, even if we assume that an insufficient foundation was laid for the receipt of Jenkins's testimony that he recognized the voice, there was no timely objection made by defendant based upon that ground. Defendant's objection to the testimony rested solely upon the hearsay argument. Therefore, we cannot exclude the challenged evidence on that basis. LSA-C.Cr.P. Art. 841; State v. Bodley, 394 So.2d 584 (La.1981).
Defense counsel's objection was directed only to the contents of the 1:00 a.m. telephone call. Therefore, no contemporaneous objection was raised to the statements allegedly made by defendant to Jenkins as they talked on the roadside that night. Therefore, the admissibility of those statements is not before us. LSA-C.Cr.P. Art. 841. Furthermore, assuming defense counsel intended that his objection cover those statements, the testimony was properly admitted as evidence of what the witness observed the defendant do and say.
This assignment of error is without merit.
By assignment of error No. 9, defendant makes the following assertion:
No. 9: The admission into evidence of the contents of a telephone call between Percy Jenkins and the accused as well as statements of Jenkins's spouse concerning the caller was prejudicial hearsay (326-327).
The phone call at issue under this assignment was made by defendant to the Jenkins residence at about 1:00 a.m. on *1263 January 10 or 11, 1981. Percy Jenkins's testimony merely establishes that a phone call was received by him at the time and on the date in question and that the caller said his name was Nathaniel. Percy Jenkins's testimony was not offered or admitted to prove that it was in fact defendant who called at 1:00 a.m. on the day in question. Therefore, his testimony is not hearsay and was properly admitted.
Even if we assume, for the sake of argument, that the testimony in question is hearsay which should have been excluded, we find no prejudice requiring reversal resulting from its admission. Percy Jenkins testified at trial that he could not identify defendant as the caller. That testimony by him was sufficient to remove any prejudice suffered by defendant as a result of the other statements made by Percy Jenkins while testifying. LSA-C.Cr.P. Art. 921; State v. Johnson, 381 So.2d 436 (La.1980).
During his testimony, Jenkins volunteered the following statement made by his wife: "When I came back, my wife asked me who was it. I say, some Nathaniel or another. She spoke, she say, oh brother, I wish you had a told me. Said, that ain't nobody but Nathaniel Small." (Tr. p. 327). Defendant contends this evidence was hearsay improperly admitted to show the low esteem Jenkins's spouse held for defendant. The wife's statement was only mildly derogatory, if at all, and had very little prejudicial or inflammatory effect. The improper admission of evidence relating to a defendant's character, much more prejudicial in nature than this statement, has been held to be harmless error. See State v. Hartman, 388 So.2d 688 (La.1980).
This assignment of error is without merit.

Assignment of Error No. 10
Defendant makes the following assertion:
"The admission into evidence of the assertion of Charlotte Mason, defendant's sister and a nontestifying witness, that defendant and his brother had access to the room containing the contraband was prejudicial hearsay (349-350)."
Sometime after defendant had been taken into custody and removed from the Inca Street residence in Harvey, Louisiana, and, apparently, while officers were in the process of executing the search warrant they had obtained for those premises, defendant's sister appeared at the apartment. She assisted the officers in inventorying the items taken from the apartment pursuant to the search warrant. At some point, she told Trooper Carney Burcham that the bedroom in which the items later determined to be stolen from the Collins residence were found was Jessie Small's bedroom. Also, although it is not entirely clear from the record, she apparently told Burcham that everyone at the residence had access to that bedroom. Trooper Burcham testified at trial concerning the sister's statements about the bedroom. Charlotte Mason was not called as a witness. The items recovered from the bedroom were found in a tan, zippered satchel. The Inca Street apartment had more than one bedroom.
We agree with defendant's assertion that this third-party statement evidence was offered to show defendant's possession of certain of the items taken in the robbery. Consequently, it is hearsay which should have been excluded. However, we find its admission to be harmless error. LSA-C. Cr.P. Art. 921.
The testimony of the state trooper concerning access to the bedroom was based, at least in part, upon his own observations rather than upon any statement made by defendant's sister. He observed the fact that there were no locks on the interior doors of the residence. From that observation, he drew a natural inference concerning access, the formation of which required no special expertise, which was admissible in evidence. See State v. Stewart, 357 So.2d 1111 (La.1978); State v. Johnson, 315 So.2d 297 (La.1975). Additionally, the hearsay statement that the sister informed the trooper that the bedroom was Jessie Small's went into the record unobjected to and became countervailing substantive evidence. State v. Boutte, 384 So.2d 773 (La.1980). Finally, the court admonished the jury concerning *1264 their acceptance of the questioned statement as evidence. This combination of events was sufficient to nullify any prejudice defendant might have suffered by the admission of the hearsay statement in question.
This assignment of error is without merit.

Assignments of Error Nos. 11 and 17
By these assignments, defendant challenges the admission of testimony by Detective Cliff Sloane as to statements made to him by one Craig "Creeper" Coleman. These statements were made when Coleman sold guns and other items taken from the Collins residence to Sloane who was working undercover in a "sting" operation in New Orleans. Sloane testified that Coleman informed him he was selling the guns and other items for someone else who was too scared to come in and sell them himself.
The admission of the statements was harmless error. Coleman testified at trial that he made the challenged statements and that he obtained the guns and other items from and sold them for Vecy Bates, Jr. Therefore, no reversible error resulted because the declarant was available for crossexamination and the challenged statements were merely cumulative and corroborating evidence. LSA-C.Cr.P. Art. 921; State v. Johnson, 381 So.2d 436 (La.1980). Additionally, defendant's mistrial motion was properly denied because the evidence of crime involved in the statements admitted dealt with the disposition of items taken in the robbery for which defendant was on trial. Therefore, no "other crimes" evidence was offered by the statements at issue.
Defendant also challenges the testimony of Sloane that Coleman had sold stolen merchandise to him on other occasions while the "sting" operation was being conducted. Defendant's mistrial motion concerning these statements was properly denied because the other crimes evidenced by the statements involved other criminal activity by Coleman, not the defendant. The state made no attempt to link defendant to these other transactions.
Coleman testified he sold the guns for Bates. A videotape recording of the transaction between Sloane and Coleman was also shown to the jury and admitted into evidence. Defendant challenged the admission of both Coleman's testimony and the videotape as inadmissible, prejudicial hearsay.
The videotape was properly admitted because it is the "best evidence" of the transaction between Sloane and Coleman. LSA-R.S. 15:436. Merely because it corroborates the testimony of Sloane and Coleman and is somewhat cumulative in nature is no reason to require its exclusion. The tape is relevant to show how and from whom the stolen property was recovered and to link the property to defendant's coperpetrator of the robbery. Therefore, it tends to prove the commission of the robbery in which defendant allegedly acted as a principal and, consequently, is admissible evidence. LSA-R.S. 15:441.
Coleman testified Bates gave him the stolen items with the understanding that Coleman was to sell them for Bates and keep a part of the proceeds for himself. Bates was not called as a witness. It had already been established that Bates was one of the robbers and that defendant was seen in his company shortly before the robbery. It had also already been established that goods stolen from the Collins residence were recovered at defendant's Inca Street residence. Coleman's testimony was offered to show Bates's possession of goods stolen from the Collins residence and, thereby, further implicate defendant as a principal in the commission of the robbery. Therefore, Coleman's testimony as to what Bates said and did is hearsay. However, its admission is harmless error because the testimony is merely cumulative and corroborative of the other evidence noted. LSA-C. Cr.P. Art. 921.
Defendant also asked for a mistrial following a question posed to State Trooper Detective James McKenzie concerning his involvement in the recent "ski mask rapist" case involving John Simonis. The record *1265 reveals that there was an immediate objection by defense counsel to this question and no testimony was given as a response. The judge sustained the objection and gave an emphatic and detailed admonition to the jury to totally disregard the question asked McKenzie. In asking that question, the record clearly reveals the state made no attempt by innuendo to connect defendant to the commission of that notorious offense. Furthermore, the judge's admonition to the jury was sufficient to nullify any prejudice based upon the improper question.
Therefore, the judge's actions in denying defendant's various mistrial motions were entirely proper under the provisions of LSA-C.Cr.P. Arts. 770, 771, and 775.
These assignments of error are without merit.

Assignment of Error No. 12
Defendant asserts reversible error occurred when Detective McKenzie was allowed to testify that Mrs. Nolden, the housekeeper, failed to pick out defendant's brother as a suspect from a photographic lineup. The import of this evidence is that by this failure and other investigation defendant's brother was eliminated as a suspect in this case. The only evidence possibly linking the brother to the crime was the fact that he was at the apartment where some of the stolen property was recovered.
Since Mrs. Nolden's failure to pick out Jessie Small was offered as proof that he did not participate in the robbery, Detective McKenzie's testimony concerning that conduct was hearsay and should have been excluded. State v. Ford, 336 So.2d 817 (La. 1976), and authorities cited therein. However, we find its admission in this case to be harmless error. Mrs. Nolden testified that she had no way of knowing who the second person who entered the house that day was. By taking the stand and offering that testimony, Mrs. Nolden was subject to cross-examination upon the whole case. LSA-R.S. 15:280. There were no improper restrictions placed upon defense counsel's crossexamination of the witness. Had there been such restrictions, reversible error might have resulted. State v. Senegal, 316 So.2d 124 (La.1975). Counsel cannot cite his failure to thoroughly cross-examine the witness concerning the second photographic lineup she was shown as grounds for reversal. Additionally, the import of Mrs. Nolden's testimony, as certainly perceived by the jury, was that she could not eliminate anyone from consideration as the second suspect.
Furthermore, Detective McKenzie testified only that Mrs. Nolden did not recognize anyone in the second lineup as the man she saw at the time of the robbery. This testimony was, in effect, nothing more than a restatement of Mrs. Nolden's prior testimony. Therefore, we find no error warranting reversal. LSA-C.Cr.P. Art. 921.
This assignment of error is without merit.

Assignment of Error No. 13
Defense counsel assigns as error the admission of testimony by Detective McKenzie that, through his investigation, it had been determined that Jessie Small, defendant's brother, was in New Orleans on the day of the robbery. Defendant contends this statement is prejudicial hearsay and requires the reversal of defendant's conviction.
This evidence was offered to show that defendant's brother should not have been considered a plausible suspect in this case and is hearsay. However, its admission in this case is harmless error. There is no evidence that Jessie Small was in or near the town of St. Joseph, Louisiana, at the time of the robbery. On the other hand, there is considerable circumstantial and direct evidence that defendant was not only in St. Joseph but also in the immediate vicinity of the Collins residence immediately before and at the time of the robbery. Given the factual context presented by all the evidence offered at trial, the jury could have reasonably eliminated Jessie Small as a plausible suspect in the absence of Detective McKenzie's statement. Consequently, we find no prejudice warranting reversal presented by this assignment. LSA-C. Cr.P. Art. 921.
This assignment of error is without merit.

*1266 Assignment of Error No. 15

Defendant assigns as error the trial court's denial of defendant's motion for new trial based on the insufficiency of the evidence. Citing Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), defendant claims that, excluding the inadmissible hearsay, no rational juror could have found proof beyond a reasonable doubt of each element essential to the conviction of the accused.
Nathaniel Small's conviction is based upon circumstantial evidence. The Jackson v. Virginia standard of review, as applied to a circumstantial evidence case, is as follows:
"... when we review a conviction based upon circumstantial evidence we must determine that, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have concluded beyond a reasonable doubt that every reasonable hypothesis of innocence had been excluded." State v. Austin, 399 So.2d 158 (La.1981), at p. 160.
The robbery in question was committed by two black males. Both Nathaniel Small and Vecy Bates, Jr. are black. Bates was identified by the victim as one of the robbers. Defendant was seen in the company of Bates in the immediate vicinity of the Collins residence on the night before and on the morning of the robbery. Defendant and Bates were seen together as little as one or two hours before the robbery. Defendant and Bates were seen driving a white pickup truck throughout their visit to the St. Joseph area. It was established that the robbers came to the Collins residence twice on the morning of the robbery in a white pickup truck. A white pickup truck was observed parked at the Collins residence at about the time of the robbery.
It was established that Bates arranged to sell some of the stolen items in the New Orleans area within a few days after the robbery and these items were recovered. Many of the stolen items were recovered from defendant's residence in Harvey, Louisiana, a suburb of New Orleans, on the morning after the robbery. Among the things found in defendant's residence were two stocking caps similar in color and design to those worn by Bates and the man the victim saw in the truck on the morning of the robbery.
On the morning of the robbery, within an hour or two of the actual entry of the Collins house, defendant called the Collinses' next-door neighbor and asked if Mr. Collins was home. A night or two before the robbery, defendant expressed an interest in making some fast money.
Defendant's assertion that the evidence is insufficient to support his conviction rests entirely upon some vague insinuations that defendant's brother was the second robber. According to defendant, the lack of evidence showing Jessie Small's whereabouts at the time of the robbery creates a reasonable doubt which no rational trier of fact can overcome and requires that he be given a new trial. However, the record is totally devoid of any evidence placing Jessie Small in the vicinity of the Collins house at any time relevant to this case. On the other hand, defendant's presence in the vicinity of the Collins residence, at or near the time of the robbery, is firmly established by the evidence.
Viewing the evidence in the light most favorable to the prosecution, we determine that a rational trier of fact could have concluded that the state proved the essential elements of the crime beyond a reasonable doubt and that every reasonable hypothesis of innocence had been excluded.
This assignment of error is without merit.

Assignment of Error No. 16
Defendant contends the sentence he received, 45 years at hard labor without benefit of parole, probation, or suspension of sentence, is excessive.
In formulating the length of the sentence to be imposed, the record shows the court gave adequate consideration to the appropriate factors. The offense defendant and Bates committed was of a violent nature. Defendant has an extensive criminal record containing numerous misdemeanor and felony convictions. Additionally, defendant had several misdemeanor and felony arrests *1267 for which there was no disposition at the time of sentencing. Furthermore, the court noted defendant's failure to respond favorably to shorter periods of incarceration on three prior occasions. In essence, the court noted defendant showed little likelihood of rehabilitation and seemed undeterred in his criminal activity by short periods of imprisonment. Therefore, in the interest of protecting society from defendant's further criminal activity, the court imposed a lengthy sentence. Additionally, we note defendant's conviction exposed him to a possible sentence of 99 years at hard labor without benefit of parole, probation, or suspension of sentence. Given defendant's prior criminal record and the absence of mitigating circumstances in this case, we find no abuse of discretion by the trial court in the sentence imposed.
This assignment of error is without merit.

Decree
For the foregoing reasons, the conviction and sentence appealed are affirmed.
Affirmed.