PENZATO, J.
*59 The defendant, Brandon R. Martin, was charged by felony bill of information with three counts of aggravated assault with a firearm, violations of La. R.S. 14:37.4 (counts one, two, and three); and possession of a firearm by a person convicted of certain felonies, a violation of La. R.S. 14:95.1 (prior to revision by 2017 La. Acts No. 281, § 1) (count four).[1] He entered a plea of not guilty and, following a jury trial, was found guilty as charged on counts one, three, and four, and guilty of attempted aggravated assault with a firearm on count two. He filed motions for new trial and postverdict judgment of acquittal, both of which were denied. The district court sentenced the defendant to ten years at hard labor on count one, five years at hard labor on count two, ten years at hard labor on count three, and ten years at hard labor without the benefit of probation, parole, or suspension of sentence on count four.[2] The district court further ordered all of the sentences to run concurrently. The State subsequently filed a habitual offender bill of information. After a hearing, the defendant was adjudicated a second-felony habitual offender as to count four.[3] The court then sentenced the defendant to forty years at hard labor without the benefit of probation or suspension of sentence.[4] The defendant now appeals, alleging four assignments of error. For the following reasons, we vacate the original sentence imposed on count four, and we affirm the defendant's convictions, habitual offender adjudication, and sentences.
FACTS
On January 19, 2016, the defendant drove to his father, James Martin's, home in Slidell, Louisiana, and confronted his father and two brothers, Jermaine Singleton *60 and Randy Martin, the victims. The defendant, who had a gun, threatened to kill Jermaine. James and Randy tried to protect Jermaine, who was recovering from surgery, from the defendant. The defendant ultimately left the scene without firing his weapon.
SUFFICIENCY
In his third assignment of error, the defendant argues that the evidence presented at trial was insufficient to support his convictions. Specifically, he contends that the State failed to prove beyond a reasonable doubt that he was in possession of a firearm. The defendant notes that a firearm was not recovered and complains that the State's witnesses gave inconsistent statements regarding the firearm.
When issues are raised on appeal, both as to sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. State v. Hearold , 603 So.2d 731, 734 (La. 1992). The reason for reviewing the sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana , 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accordance with Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the essential elements of the offense have been proved beyond a reasonable doubt. When the entirety of the evidence is insufficient to support the conviction, the accused must be discharged as to that crime, and any discussion by the court of the trial error issues as to that crime would be pure dicta since those issues are moot. Hearold , 603 So.2d at 734.
On the other hand, when the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, the accused is not entitled to an acquittal, and the reviewing court must then consider the assignments of trial error to determine whether the accused is entitled to a new trial. If the reviewing court determines there has been trial error (which was not harmless) in cases in which the entirety of the evidence was sufficient to support the conviction, then the accused must receive a new trial, but is not entitled to an acquittal even though the admissible evidence, considered alone, was insufficient. Hearold , 603 So.2d at 734. Accordingly, we proceed first to determine whether the entirety of the evidence was sufficient to support the defendant's convictions.
A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const. amend. XIV ; La. Const. art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia , 443 U.S. at 319, 99 S.Ct. at 2789 ; see La. Code Crim. P. art. 821(B) ; State v. Ordodi , 2006-0207 (La. 11/29/06), 946 So.2d 654, 660 ; State v. Mussall , 523 So.2d 1305, 1308-09 (La. 1988). The Jackson standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. State v. Patorno , 2001-2585 (La. App. 1 Cir. 6/21/02), 822 So.2d 141, 144.
*61 Aggravated assault with a firearm is an assault committed with a firearm. La. R.S. 14:37.4A. Pursuant to La. R.S. 14:95.1 A, "It is unlawful for any person who has been convicted of ... any violation of the Uniform Controlled Dangerous Substances Law which is a felony ... to possess a firearm or carry a concealed weapon." [Footnote omitted.] The defendant does not dispute his identity as the perpetrator of the offenses, and notes that he admitted that he committed simple assault. However, the defendant contends that because the State failed to prove he was in possession of a firearm, he should not have been found guilty of the charged offenses.
According to Jermaine Singleton's trial testimony, the dispute arose because of Jermaine "putting [the defendant] out" of his house approximately four months prior to the instant offenses. Jermaine explained that after the defendant was released from prison for an unrelated offense, he allowed the defendant to stay at his home and work with him. However, when the defendant quit working with Jermaine and began bringing women into the home, Jermaine told him that he had to move out. The defendant became angry and attempted to fight with Jermaine, but Jermaine's wife stopped the dispute. Thereafter, on January 19, 2016, the defendant drove to their father's house and jumped out of the vehicle that he was driving. The defendant then walked up to Jermaine and threatened to beat him up and kill him. James and Randy attempted to stop the defendant, as Jermaine was recovering from a surgery. After the defendant pushed Jermaine's forehead with his finger, James pushed the defendant away from Jermaine. The defendant walked back toward the vehicle he arrived in, bent over in the vehicle, and walked back toward the victims. He stated that he was going to kill Jermaine. According to Jermaine, James and Randy were "steady pushing [the defendant] away from" him, and Jermaine told James to leave the defendant alone, but the defendant reached into his back pocket and pulled out a gun. When the defendant pulled out the gun, he pointed it "directly at [Jermaine's] forehead." The defendant continually told Jermaine that he was going to kill him, but did not pull the trigger of the gun, which Jermaine described as a black .38 revolver with a rubber handle. James and Randy again pushed the defendant away, and as the defendant began walking away, he placed the gun in his back pocket. The defendant then entered the vehicle that he arrived in and drove away. Jermaine testified that he saw his nephew in the defendant's vehicle that day and that after the defendant left, Randy contacted the police. In Jermaine's written statement, he stated that the defendant was "waving a gun" at the three of them and "talking about he is going to kill me."
James Martin testified that the defendant arrived at his house on January 19, 2016, to confront Jermaine. James stated that the defendant, who had a gun, confronted Jermaine and threatened to hurt and kill him. James attempted to stop the defendant, who then hit James's chest and knocked him to the ground, almost into Jermaine. As James attempted to get back up, he saw the barrel of the defendant's gun, which he testified the defendant had pointed over James's shoulder. As the defendant walked back out to the vehicle he arrived in, James walked out to the side of the street to talk to the defendant, but the defendant became "violent" again and left. James followed the defendant to the house where he was staying, which was around the corner, and asked him why he wanted to "bring that drama" to his house. James's written statement indicates that the defendant pulled up to James's home while he, Jermaine, and Randy were outside.
*62 The defendant was yelling and "steady waving the gun."
Randy Martin testified that on January 19, 2016, the defendant arrived at James's house "out of nowhere" and began "fussing" at Jermaine and "cursing him out about something old that had happened." Randy testified that he did not see anyone in the vehicle other than the defendant. The defendant walked back out to the vehicle that he arrived in and when he returned to the victims, he reached into his back pocket and pulled out a gun, which Randy described as a .38 caliber revolver. Randy testified that the defendant was acting extremely violent, and he was scared that the defendant might shoot someone. Randy contacted the defendant's probation officer prior to contacting 911. During his testimony, Randy clarified that the defendant did threaten him, and he was unsure why he told the 911 operator otherwise. Randy explained that the "primary" victims were James and Jermaine and that he was a "side" victim. However, Randy noted that the defendant stated that if they, referring to James and Randy, "[got] in the way," he would kill them too. Randy also provided a written statement, wherein he stated that the defendant arrived at his house in a light blue Hyundai, exited the vehicle, and began cursing. The defendant then reached into his back pocket and pulled out a revolver, which he noted was a .38 caliber. Before leaving the scene, the defendant "was shouting he was going to kill" Jermaine and "would kill my father James if he stepped in the way."
The defendant's girlfriend, Tequila Moss, testified on his behalf. According to her testimony, she and the defendant were living together at the time of the instant offenses. She testified that she and the defendant drove to the defendant's father's house, and the defendant's father and brothers were standing outside. When the defendant exited the vehicle, they started arguing. She heard the defendant and his father start screaming and heard the defendant's father say, "[L]eave it alone, don't worry about it." According to Tequila, the defendant then told his father that he never took his side. The defendant turned toward Jermaine and began arguing with him. Tequila testified that after the defendant's father told him not to fight with Jermaine because he was recovering from a surgery, the situation diffused and she and the defendant returned to her home, which was near the defendant's father's home. Tequila maintained that the defendant never pulled a gun on anyone and never returned to the vehicle to retrieve a gun. After she and the defendant returned to her home, the defendant's father drove up.
The issue raised by the defendant as to whether he possessed a firearm is a matter of credibility. The jury heard all of the testimony and believed the accounts of Jermaine, James, and Randy over that of Tequila. In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support a factual conclusion. State v. Higgins , 2003-1980 (La. 4/1/05), 898 So.2d 1219, 1226, cert. denied, 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005). The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a factfinder's determination of guilt.
*63 State v. Taylor , 97-2261 (La. App. 1st Cir. 9/25/98), 721 So.2d 929, 932. We are constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases. See State v. Mitchell , 99-3342 (La. 10/17/00), 772 So.2d 78, 83. The fact that the record contains evidence that conflicts with the testimony accepted by a trier of fact does not render the evidence accepted by the trier of fact insufficient. State v. Quinn , 479 So.2d 592, 596 (La. App. 1st Cir. 1985).
The guilty verdicts returned by the jury indicate that it accepted the State's evidence. In reviewing the evidence, we cannot say that the jury's determination was irrational under the facts and circumstances presented to them. The victims testified that the defendant had a gun, waved or pointed it at them, and threatened to kill them. After a thorough review of the record, we find the evidence supports the jury's verdicts. We are convinced that viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was guilty of the charged offenses., See State v. Calloway , 2007-2306 (La. 1/21/09), 1 So.3d 417 (per curiam).
This assignment of error is without merit.
MOTION IN LIMINE AND MOTION FOR NEW TRIAL
In his first assignment of error, the defendant argues that the district court erred in overruling his objection and motion in limine wherein he attempted to prevent the State from introducing jailhouse telephone calls. The defendant specifically argues that the recordings were not timely turned over to the defense, and that the prejudicial nature of the content of the telephone calls far outweighed any probative value they might have. In his second assignment of error, the defendant argues that the district court erred in denying his motion for new trial on this basis.
During trial, on November 9, 2016, the State sought to introduce telephone calls made by the defendant from jail on November 1 and 6, 2016. The State indicated that one of the calls was made the night before trial began and that as soon as it became aware of the calls, it notified the defense and provided a recording of the calls. The State clarified that it received notice of both calls at the same time. Defense counsel confirmed that the State provided copies of the calls around 3:30 p.m. on November 8, 2016. The court found the State exercised due diligence in obtaining the recordings and in providing them to the defense at an appropriate time.
The State further argued that the calls were relevant to show Tequila's interest in testifying on behalf of the defendant and that the defendant had an influence in controlling Tequila's behavior. According to the State, if the defendant were released, Tequila would have to confront him, and "his aggressive nature towards [her] is obviously very concerning as far as the influence that he's wielding over [her] even while he is incarcerated." Defense counsel responded that Tequila already admitted during her testimony that she had an interest in the defendant's release.
After hearing arguments, the district court concluded that the content of the telephone calls was relevant and probative. It explained that the calls "have the potential of the state showing that the witness did have some interest in testifying a particular way." The court noted that it also would allow defense counsel to recall the witness and ask her limited questions regarding her perception of the calls.
*64 The recordings of the jailhouse telephone calls were played for the jury. In the November 1, 2016, telephone call, the defendant repeatedly cursed at Tequila because she did not answer his telephone call. When she stated that she did not answer because she had left her phone at home, he called her a liar and told her they would see who got the "last laugh." When Tequila told him that his comment sounded like a threat, the defendant responded, "I don't make threats." Thereafter, on November 6, 2016, the defendant called Tequila and after continually cursing at her, told her that she was "starting to think [she] can do whatever the f*** [she] wants to do."
Thereafter, Tequila was called back to the witness stand. She explained that on November 1, 2016, the defendant was angry because she left her phone at home while she went trick-or-treating. According to Tequila, the defendant thought that she was doing something that she had "no business" doing. She explained that she and the defendant discussed cheating regularly. Tequila stated that she did not consider the phone call to be a threat and noted that the call had nothing to do with the defendant's trial. As to the November 6, 2016, call, Tequila noted that the call was made the day before his trial was set to begin and that he was upset because she was at the casino with a friend. Tequila noted that because that friend sought to engage in a sexual relationship with her, the defendant did not want them to spend time together.
Louisiana Code of Evidence Article 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Further, Article 402 states, in pertinent part, that "[a]ll relevant evidence is admissible," and "[e]vidence which is not relevant is not admissible." In questions of relevancy, much discretion is vested in the district court. Such rulings will not be disturbed on appeal in the absence of a showing of manifest abuse of discretion. Ultimately, questions of relevancy and admissibility are discretion calls for the district court, and its determinations regarding relevancy and admissibility should not be overturned absent a clear abuse of discretion. State v. Duncan , 98-1730 (La. App. 1st Cir. 6/25/99), 738 So.2d 706, 712-13. "Except as otherwise provided by legislation: (1) Extrinsic evidence to show a witness' bias, interest, corruption, or defect of capacity is admissible to attack the credibility of the witness." La. Code Evid. art. 607D(1).
The district court did not abuse its discretion by allowing the State to introduce the recordings of the defendant's jailhouse telephone calls to Tequila or in finding that the State was timely in notifying the defense of its intent to introduce the recordings. The November 1, 2016 call was made less than a week prior to trial, and the November 6, 2016 call was made the day before trial. The State was not aware of the calls until November 8, 2016, and the State noted that it provided copies of the recordings to defense counsel as soon as it became aware of the calls. See La. Code Crim. P. art. 716 ; La. Code Crim. P. art. 729.3. Defense counsel confirmed that he was provided with the recordings of the calls that afternoon. Although Tequila testified that she would not lie for the defendant, she stated that she loved him and would like it if he could return home. After the recordings were played for the jury and Tequila was recalled to the stand, she admitted that she and the defendant "yell" at each other regularly and that the defendant loses his temper when she does something that he does not want her to do.
*65 Thus, the statements made by the defendant during the telephone calls, although prejudicial, were highly probative of his influence over Tequila. Because we find the district court did not err in admitting the calls into evidence, we find no error in the court's denial of the defendant's motion for new trial.
Accordingly, these assignments of error are without merit.
HABITUAL OFFENDER ADJUDICATION AND EXCESSIVE SENTENCE
In his final assignment of error, the defendant argues that evidence presented at the habitual offender adjudication was insufficient to establish that he was a second-felony habitual offender. Specifically, the defendant contends that the State failed to negate the ten-year cleansing period. The defendant argues in the alternative that the sentence imposed by the district court was excessive.
In a habitual offender proceeding, the state has the burden of proving that the defendant was convicted of a prior felony and that the ten-year cleansing period has not elapsed between the defendant's release from custody on the prior offense and the commission of the new offense. See La. R.S. 15:529.1A-D (prior to revision by 2017 La. Acts No. 282, § 1); State v. Payton , 2000-2899 (La. 3/15/02), 810 So.2d 1127, 1130 ; State ex rel. Wilson v. Maggio , 422 So.2d 1121, 1123 (La. 1982) ; State v. Thomas , 2005-2210 (La. App. 1st Cir. 6/9/06), 938 So.2d 168, 176, writ denied, 2006-2403 (La. 4/27/07), 955 So.2d 683. Any competent evidence may be used to satisfy the State's burden of proof. See Payton , 810 So.2d at 1130 ; State v. Moten , 510 So.2d 55, 63 (La. App. 1st Cir.), writ denied, 514 So.2d 126 (La. 1987). Such evidence may include (1) testimony from witnesses, (2) expert opinion regarding the fingerprints of the defendant when compared with those in the prior record, (3) photographs in the duly authenticated record, or (4) evidence of identical driver's license number, sex, race, and date of birth. Payton , 810 So.2d at 1130.
At the habitual offender hearing, the State introduced into evidence the record in connection with the defendant's predicate offense, which was his April 19, 2004, conviction under docket number 378,617, for simple burglary. The record contained the transcript, minutes, and revocation notes. The State pointed out that for the predicate offense, the defendant received a five-year sentence. Testimony was presented that the defendant's fingerprints taken in court on the date of the hearing matched those in the record of the predicate offense. An investigator with the district attorney's office testified that he ran an updated "rap sheet" for the defendant, which was introduced into evidence. The "rap sheet" was printed from the Cajun database and indicated that the defendant's sentence for his predicate conviction was completed on July 27, 2010. The district court initially found that the State failed to meet its burden that the cleansing period had not lapsed. The State requested reconsideration of the court's ruling after pointing out that the record of the defendant's predicate conviction contained a letter from the parole board addressed to a district court judge indicating that the defendant's parole hearing was set for November 1, 2006. Thereafter, the court ruled that the State met its burden of proving that the ten-year cleansing period had not lapsed and adjudicated the defendant a second-felony habitual offender.
The district court provided written reasons in support of its ruling. In its reasons, the court noted that the defendant pled guilty to his predicate offense on April 19, 2004, and was sentenced that day to *66 imprisonment for a term of five years. His sentence was suspended, and the defendant was placed on probation for a term of five years. The defendant's probation was revoked on May 13, 2005. Per a letter filed August 15, 2006, the defendant's parole hearing was set for November 1, 2006. The court noted that the defendant's incarceration as of the date of the letter, August 11, 2006, was "evident in the language contained therein." The instant offense occurred on January 19, 2016. Thus, ten years had not elapsed between the date of the defendant's release for his predicate conviction and the date he committed the instant offenses. Accordingly, the district court correctly found that the State proved the elements necessary for application of the habitual offender statute.
The defendant argues in the alternative that the sentence imposed by the district court is excessive. Article I, Section 20 of the Louisiana Constitution prohibits the imposition of excessive punishment. Although a sentence may be within statutory limits, it may violate a defendant's constitutional right against excessive punishment and is subject to appellate review. State v. Sepulvado , 367 So.2d 762, 767 (La. 1979). A sentence is constitutionally excessive if it is grossly disproportionate to the severity of the offense or is nothing more than the needless infliction of pain and suffering. State v. Hurst , 99-2868 (La. App. 1st Cir. 10/3/00), 797 So.2d 75, 83, writ denied, 2000-3053 (La. 10/5/01), 798 So.2d 962. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. A trial court is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed by it should not be set aside as excessive in the absence of manifest abuse of discretion. State v. Lobato , 603 So.2d 739, 751 (La. 1992).
Louisiana Code of Criminal Procedure article 894.1 sets forth items which must be considered by the district court before imposing sentence. The district court need not recite the entire checklist of Article 894.1, but the record must reflect that the guidelines were adequately considered. State v. Herrin , 562 So.2d 1, 11 (La. App. 1st Cir.), writ denied, 565 So.2d 942 (La. 1990). A review for individual excessiveness should consider the circumstances of the crime and the district court's stated reasons and factual basis for its sentencing decision. State v. Watkins , 532 So.2d 1182, 1186 (La. App. 1st Cir. 1988). Remand for full compliance with Article 894.1 is unnecessary when a sufficient factual basis for the sentence is shown. State v. Lanclos , 419 So.2d 475, 478 (La. 1982).
At the time of the defendant's underlying offense, felon in possession of a firearm, the offense carried a sentence of imprisonment at hard labor for not less than ten nor more than twenty years without the benefit of probation, parole, or suspension of sentence, and a fine of not less than one thousand dollars nor more than five thousand dollars. La. R.S. 14:95.1B. As a second-felony habitual offender, the defendant's mandatory sentence was not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction. La. R.S. 15:529.1A(1) (prior to revision by 2017 La. Acts No. 282, § 1). Thus, the defendant's sentencing exposure was ten years to forty years without the benefit of parole, probation, or suspension of sentence. See State v. Bruins , 407 So.2d 685, 687 (La. 1981). The defendant was sentenced to forty years at hard labor without the benefit of probation or suspension of sentence.[5]
*67 The defendant contends that this sentence is "beyond excessive" based on the facts of the case and the wishes of his family and the victims in this case that he receive mental health treatment. Despite his contentions, the defendant did not present any testimony or evidence prior to the imposition of his habitual offender sentence in support of this argument. Given the facts of this case and the defendant's predicate convictions for drug-related felonies and simple burglary, the sentence imposed by the district court was not grossly disproportionate to the severity of the offense and, therefore, was not excessive. This assignment of error is without merit.
ORIGINAL SENTENCE IMPOSED ON COUNT FOUR VACATED; CONVICTIONS, HABITUAL OFFENDER ADJUDICATION, AND SENTENCES AFFIRMED.
Holdridge J. concurs with reasons.
HOLDRIDGE, J., concurs.
I respectfully concur. The trial court erred in denying the defendant's motion in limine and allowing the introduction of the telephone call recordings made by the defendant from jail on November 1 and 6 of 2016. The telephone call recordings were not relevant to any facts regarding the guilt or innocence of the defendant. The majority holds that the telephone call recordings were admissible under La. Code Evid. art. 607(D)(1) to show the defendant's bias, interest, corruption, or defect in capacity. However, this is clearly in error since the only value that the telephone call recordings had was to show that the defendant was a bad person. Relevant evidence may be excluded if, among other things, its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. La. Code Evid. art. 403. After reviewing the entire record, we fail to see how the evidence of the unrelated telephone call recordings concerning the defendant's character has any probative value in the instant matter. Even if the recordings had any relevance to any fact at issue, the prejudicial effect far exceeds any probative value it may have in the instant matter. See La. Code of Evid. arts. 401 and 403. While the trial court erred in admitting the tapes, there is overwhelming evidence that the defendant committed the crime for which he was found guilty by the jury. Therefore, any error by the trial court was harmless error. See State v. Small, 427 So.2d 1254, 1263 (La. App. 2 Cir. 1983) (holding that the improper admission of evidence relating to a defendant's character, much more prejudicial in nature has been held to be harmless error.)

The defendant's predicate offense for purposes of count four is his January 10, 2008, conviction under Twenty-Second Judicial District Court docket number 437,044, for possession with intent to distribute a Schedule I controlled dangerous substance, possession with intent to distribute a Schedule II controlled dangerous substance, and possession of a Schedule III controlled dangerous substance.

In its brief with this court, the State argues that the district court improperly restricted benefits on counts one and three and requests that this court correct the error and remand for correction of the commitment order. While the minutes do state that the district court restricted benefits on counts one and three, the transcript makes clear that the court only restricted benefits on count four. When there is a discrepancy between the minutes and the transcript, the transcript prevails. See State v. Lynch , 441 So.2d 732, 734 (La. 1983). Because it is clear that the district court restricted benefits on count four only, remand is unnecessary.

The habitual offender bill of information lists the defendant's predicate offense as his April 19, 2004, conviction under Twenty-Second Judicial District Court docket number 378,617, for simple burglary.

Although the minute entry states that the district court vacated the defendant's original sentence prior to imposing his habitual offender sentence, the transcript reveals that the court failed to vacate its previously imposed sentence on count four prior to imposing the habitual offender sentence. When there is a discrepancy between the minutes and the transcript, the transcript prevails. See Lynch , 441 So.2d at 734. Thus, we vacate the original ten-year sentence imposed on count four to conform with the requirements of La. R.S. 15:529.1. See State v. Jackson , 2000-0717 (La. App. 1st Cir. 2/16/01), 814 So.2d 6, 11 (en banc), writ denied, 2001-0673 (La. 3/15/02), 811 So.2d 895.

We note that the district court failed to order the defendant's sentence to be served without benefit of parole. The defendant's parole restriction should be self-activated under La. R.S. 15:301.1A. See State v. Williams , 2000-1725 (La. 11/28/01), 800 So.2d 790, 799.